49 A.3d 860

NEW JERSEY ASSOCIATION OF SCHOOL ADMINISTRATORS, DR. TERRY VAN ZOEREN, DR. SIMON BOSCO, AND JOSEPH ABATE, PLAINTIFFS–RESPONDENTS, v. BRET SCHUNDLER, COMMISSIONER OF EDUCATION OF THE STATE OF NEW JERSEY, AND PAULA T. DOW, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, DEFENDANTS–APPELLANTS.

Argued January 18, 2012—Decided May 3, 2012.

536

538

*Michelle Lyn Miller,* Senior Deputy Attorney General, argued the cause for appellants (*Jeffrey S. Chiesa,* Attorney General of New Jersey, attorney).

*David B. Rubin* argued the cause for respondents.

Chief Justice RABNER delivered the opinion of the Court.

In 2007, the Legislature passed a series of reform measures designed to lower property taxes. Among other issues, the reforms attempted to address the problem of excessive benefits for high-level school administrators. The following year, the Commissioner of Education issued various regulations to implement the new laws. The regulations limited certain benefits in new contracts for high-level administrators, and also capped payments for accumulated unused sick leave at $15,000.

The Appellate Division held that the challenged regulations impermissibly reduced the compensation of tenured assistant superintendents, in violation of the tenure statute, and improperly deprived certain administrators of vested rights. The Appellate Division also concluded that the challenge to the sick leave cap was partially mooted by a newly enacted law.

We conclude that the Legislature had the authority to modify terms and conditions for future contracts for public employment in a manner that did not raise constitutional concerns. The laws that protect tenure rights did not prevent the Legislature's later actions. In this case, the Legislature properly exercised its power when it directed the Commissioner to issue regulations for new contracts for superintendents and assistant superintendents. The regulations that followed were consistent with their respective

enabling statutes and advanced the Legislature's goals. They also protected benefits that employees had already accumulated.

We also conclude that the statute capping sick leave payments has not been superseded and covers high-level employees, including superintendents and assistant superintendents. We read the original statute alongside a newer law on the subject, to try to give effect to both, and conclude that the more recent enactment expands the sick leave cap to cover all newly hired school employees.

Accordingly, we reverse the judgment of the Appellate Division.

## I.

The statutes and regulations in question date back to executive and legislative efforts in 2006. In July of that year, the Legislature adopted a concurrent resolution that declared "[t]his State's high property taxes are a matter of great concern to the people of New Jersey." *See* Assemb. Con. Res. 3, 212th Leg. (N.J. 2006), *available at* http://www.njleg.state.nj.us/2006/bills/acr/3_I1.pdf. The resolution also recognized the need "to bring about property tax reform based upon a fairer distribution of tax burdens and the adoption of efficiencies." *Ibid.*

The resolution created four legislative committees on school funding, government consolidation and shared services, public employee benefits, and constitutional reform. *Ibid.* The committees were charged with developing proposals to reduce property taxes, and on December 1, 2006, each committee issued a final report containing a series of recommendations. *See* Special Session on Property Tax Reform, *available at* http://www.njleg.state. nj.us/propertytaxsession/specialsessionpt_reports.asp.

Two problems identified in the committee reports are particularly relevant to this appeal. First, the Committee on Government Consolidation and Shared Services found that "inflated salaries and lucrative benefits" for superintendents, assistant superintendents, and business administrators "have cost New Jersey

taxpayers millions of dollars." *See* J. Legis. Comm. on Gov't Consolidation and Shared Servs., *Final Report,* 212th Leg. 55 (N.J. Dec. 1, 2006). The committee relied on a report from the New Jersey State Commission of Investigation, which documented that from 1997 to 2004 the average salary for public school administrators rose thirty-one percent—more than double the average increase for teacher salaries. *Ibid.* (relying on State of New Jersey Commission of Investigation, *Taxpayers Beware: What You Don't Know Can Cost You—An Inquiry Into Questionable and Hidden Compensation for Public School Administrators* 2 (2006) (*SCI Report* )). The report also noted that school administrators received "a host of unconventional perks, including allowances for personal chauffeurs and reimbursements for moving and housing expenses." *Ibid.* (relying on *SCI Report, supra,* at 14).

Second, the committee found that New Jersey's county superintendents had "no real power to identify inefficiencies and eliminate waste in school administration[,]" which " 'produced a vacuum in which questionable or patently abusive compensation practices have been allowed to flourish.' " *Ibid.* (quoting *SCI Report, supra,* at 5).

To remedy those inefficiencies and provide enhanced oversight of local administrative spending, the committee proposed to replace the existing position with "super" county superintendents. *Id.* at 55–56. The new post—to be known as "executive county superintendent of schools"—would have the authority to "[a]pprove or disapprove the hiring, compensation, and benefit plans of local school superintendents," among other things. *Id.* at 56.

The Public Employee Benefits Reform Committee also targeted excessive compensation of school administrators. *See* J. Legis. Comm. on Pub. Emp. Benefits Reform, *Final Report,* 212th Leg. 141–43 (N.J. Dec. 1, 2006). The committee observed that although state employees could not receive more than $15,000 for accumulated unused sick leave upon retirement, there was no limit on the amount payable to local government or school board employees. *Id.* at 141. The committee cited the SCI Report, which "revealed

the widespread practice of allowing [school] administrators to cash-in substantial amounts of accumulated sick and vacation leave at retirement or upon departure." *Id.* at 142.

The committee recommended capping the amount of sick leave payouts to local government and education employees upon retirement at $15,000. *Ibid.* The proposal was designed to "bring supplemental compensation for accumulated unused sick leave in line with the current law and practice for State employees, thus standardizing this benefit for public employees serving at different levels of government in the State." *Id.* at 143.

The Legislature adopted both recommendations in 2007 at the same time it addressed various benefits for employees throughout state government. *See L.* 2007, *c.* 53, 63, 92 and 260. The Legislature capped payments for accumulated unused sick leave to certain school board officials, at the time of retirement, at $15,000. *See N.J.S.A.* 18A:30–3.5. The new statute specifically protected employees who had already accumulated a greater amount or would do so under a pending, unexpired contract. *Ibid.*

The Legislature also created executive county superintendents, *see N.J.S.A.* 18A:7–1 to –16, and required them to "[r]eview and approve, *according to standards adopted by the commissioner,* all employment contracts for superintendents of schools, assistant superintendents of schools, and school business administrators in school districts within the county, prior to the execution of those contracts." *N.J.S.A.* 18A:7–8(j) (emphasis added).

To implement those reforms, the Commissioner of Education issued regulations on July 1, 2008, consistent with *N.J.S.A.* 18A:7–8(j) and –16. The regulations, titled "Fiscal Accountability, Efficiency and Budgeting Procedures," set standards that executive county superintendents must use in their review of new employment contracts for superintendents, assistant superintendents, and school business administrators. *See* 40 *N.J.R.* 4610(a) (July 1, 2008). Four of those regulations, at *N.J.A.C.* 6A:23A–3.1(e), are at issue in this appeal:

3. No contract shall include provisions for the reimbursement or payment of employee contributions that are either required by law or by a contract in effect in the district with other teaching staff members, such as payment of the employee's State or Federal taxes, or of the employee's contributions to FICA, Medicare, State pensions and annuities (TPAF), life insurance, disability insurance (if offered), and health benefit costs.

4. No contract shall contain a payment as a condition of separation from service that is deemed by the Executive County Superintendent to be prohibited or excessive in nature. The payment cannot exceed the lesser of the calculation of three months pay for every year remaining on the contract with proration for partial years, not to exceed 12 months, or the remaining salary amount due under the contract.

5. No contract shall include benefits that supplement or duplicate benefits that are otherwise available to the employee by operation of law, an existing group plan, or other means; for example, an annuity or life insurance plan that supplements or duplicates a plan already made available to the employee. Notwithstanding the provisions of this section, a contract may contain an annuity where those benefits are already contained in the existing contract between that employee and the district.

6. Contractual provisions regarding accumulation of sick leave and supplemental compensation for accumulated sick leave shall be consistent with *N.J.S.A.* 18A:30-3.5. Supplemental payment for accumulated sick leave shall be payable only at the time of retirement and shall not be paid to the individual's estate or beneficiaries in the event of the individual's death prior to retirement. Pursuant to *N.J.S.A.* 18A:30-3.2, a new board of education contract may include credit of unused sick leave days in accordance with the new board of education's policy on sick leave credit for all employees.

[*N.J.A.C.* 6A:23A-3.1(e)(3)-(6).[1]]

On August 14, 2008, the New Jersey Association of School Administrators, Dr. Terry Van Zoeren, Dr. Simon Bosco, Joseph Abate, Jr., and John Golden,[2] plaintiffs-respondents, filed a complaint in the United States District Court for the District of New Jersey. They sought to enjoin the use of the above four regulations, as well as other provisions in *N.J.A.C.* 6A:23A-3.1(e), on federal constitutional and state law grounds. The court denied the application for a preliminary injunction and dismissed the

---

[1] The regulations in *N.J.A.C.* 6A:23A-3.1(e) have been renumbered. For clarity, we use the original numbers that both the parties and the Appellate Division used.

[2] John Golden is no longer participating in this litigation.

lawsuit. The court declined to exercise jurisdiction under the doctrine known as *Burford* abstention, *see Burford v. Sun Oil Co.*, 319 *U.S.* 315, 63 *S.Ct.* 1098, 87 *L.Ed.* 1424 (1943), to allow the state courts the opportunity to determine important questions of state law.

Respondents next challenged the regulations by filing an appeal from a final agency decision in the Appellate Division on December 23, 2008. *See R.* 2:2–3(a)(2). They sought to invalidate various regulations, namely *N.J.A.C.* 6A:23A–3.1(e)(1), (3)-(9), and (11) (addressing review of contracts for superintendents, assistant superintendents, and business administrators), as well as *N.J.A.C.* 6A:23A–5.2(a)(2)(iv) and *N.J.A.C.* 6A:23A–5.2(a)(4) (concerning contact with and selection of legal counsel). Both parties filed motions for partial summary disposition, which were denied.

After full briefing and oral argument, the appellate panel issued its decision on August 3, 2010. *See N.J. Ass'n of Sch. Adm'rs v. Schundler,* 414 *N.J.Super.* 530, 999 *A.2d* 535 (App.Div.2010) (*NJA-SA* ). The majority invalidated in part the four regulations now before this Court—*N.J.A.C.* 6A:23A–3.1(e)(3)–(6)—finding that they "deprive[d] certain administrators of vested rights and ... reduce[d] the compensation of tenured assistant superintendents." *NJASA, supra,* 414 *N.J.Super.* at 552, 999 *A.2d* 535. Judge Grall concurred in part and dissented in part. We focus principally on the parts of the decision that remain in dispute.

Respondents raised various challenges to the regulations, including a constitutional claim that they represented an impermissible taking of property without due process of law. *Id.* at 545, 999 *A.2d* 535. In its evaluation of that argument, the majority observed that "the plaintiffs do not all stand on an equal footing." *Id.* at 546, 999 *A.2d* 535. Superintendents serve under employment contracts for three to five years under *N.J.S.A.* 18A:17–15 and are not tenured employees; assistant superintendents may achieve tenure under *N.J.S.A.* 18A:28–5 after a period of time. Once tenured, assistant superintendents "may not be 'dismissed or reduced in compensation'" except for cause. *Id.* at 547, 999 *A.2d*

535 (quoting *N.J.S.A.* 18A:28–5). The majority, therefore, viewed the property rights of certain types of plaintiffs differently: superintendents and untenured assistant superintendents lacked a property interest in future contracts, but tenured assistant superintendents had a protected interest in their compensation. *Id.* at 546–47, 999 *A.*2d 535.

Against that backdrop, the majority upheld the regulations at sections (e)(3), (4), and (5) as to superintendents and untenured assistant superintendents. The majority reasoned that because they had no vested right to particular terms in future contracts, the regulations did not amount to a taking of their property rights. *Id.* at 548–50, 999 *A.*2d 535. However, in the majority's view, sections (e)(3) and (5) could improperly reduce the compensation of tenured assistant superintendents contrary to the protection of the tenure statutes. *Ibid.* "The remedy," according to the majority, "lies ... in amending the tenure statute." *Id.* at 549, 999 *A.*2d 535. The majority initially declined to evaluate section (e)(4) as to tenured assistant superintendents because the record did not make clear the extent to which they worked under employment contracts. *Id.* at 550, 999 *A.*2d 535. In the end, the majority struck that regulation in part as well. *Id.* at 559, 999 *A.*2d 535.

The majority also invalidated the regulation capping sick leave payments because it believed section (e)(6) retroactively deprived officials of payment for unused sick leave that they had already accumulated valued at more than $15,000. *Id.* at 551, 999 *A.*2d 535. The majority noted that the regulation could bar a future contract that would allow more than $15,000 in unused sick leave payments to be accumulated. *Ibid.* That reasoning applied to superintendents and assistant superintendents, regardless of their tenure status. *Id.* at 551–52, 999 *A.*2d 535. The majority rejected respondents' argument that the enabling statute for this regulation, *N.J.S.A.* 18A:30–3.5, did not encompass superintendents and assistant superintendents. *Id.* at 557–58, 999 *A.*2d 535.

The court upheld the remaining challenged regulations in *N.J.A.C.* 6A:23A–3.1(e), which are not part of this appeal. *Id.* at

552–53, 999 *A*.2d 535. The majority also rejected various other constitutional arguments, *id.* at 553–56, 999 *A*.2d 535, and declined to consider challenges to *N.J.A.C.* 23A–5.2(a)(2)(iv) and –5.2(a)(4) because respondents lacked standing, *id.* at 558, 999 *A*.2d 535.

Judge Grall concurred for the most part but dissented on two issues. First, she disagreed with the majority's view of the effect of the tenure statutes. She therefore dissented from the majority's invalidation of "regulations that may reduce the compensation of assistant superintendents who have tenure." *Id.* at 559, 999 *A*.2d 535 (Grall, J.A.D., concurring and dissenting). Judge Grall relied on her prior decision in *New Jersey Ass'n of School Business Officials v. Davy,* 409 *N.J.Super.* 467, 978 *A*.2d 295 (App.Div.2009) (*NJASBO* ), and explained that the Legislature had the power to modify the terms and conditions of public employment unless the Constitution requires otherwise. *NJASA, supra,* 414 *N.J.Super.* at 560–61, 999 *A*.2d 535. In her judgment, the Legislature validly exercised that power when it directed the Commissioner to promulgate standards for new contracts for superintendents, assistant superintendents, and business administrators. *Id.* at 561, 999 *A*.2d 535. The Legislature was not required to achieve reform by directly amending the tenure laws, she concluded, and courts should harmonize tenure statutes with newer laws directing the Commissioner to act. *Ibid.*

Second, Judge Grall would not have addressed the sick leave cap. She believed that in May 2010, the Legislature had superseded the statute and regulation that imposed the cap. *Id.* at 559, 999 *A*.2d 535. She found that *N.J.S.A.* 18A:30–3.6, the newer law adopted after the regulations, in effect mooted section (e)(6). *Id.* at 562, 999 *A*.2d 535.

The majority agreed that the issue was "partially" moot but addressed section (e)(6) in the event a superintendent or assistant superintendent with unused sick leave worth more than $15,000 had died after the section went into effect but before *N.J.S.A.* 18A:30–3.6 was enacted. *Id.* at 552, 999 *A*.2d 535.

The Appellate Division granted the State's motion for a stay. The State filed an appeal of right as to the issues raised in dissent: the validity of the regulations at *N.J.A.C.* 6A:23A–3.1 (e)(3), (4), (5), and (6). *See R.* 2:2–1(a)(2). We also granted the State's petition for certification as to whether section (e)(6) was invalid because *N.J.S.A.* 18A:30–3.6 superseded both the regulation and *N.J.S.A.* 18A:30–3.5. 205 *N.J.* 519, 16 *A.*3d 384 (2011). The issues overlap to some extent.

## II.

The State's arguments focus primarily on the regulation capping sick leave and the effect of the tenure statute on the challenged regulations. First, the State argues the Appellate Division incorrectly found that the regulation capping sick leave retroactively bars payment for accumulated, unused sick leave valued at more than $15,000. The State also maintains that the regulation properly directs that payment may only be made at the time of retirement and not to an employee's estate or beneficiaries if the employee dies before retirement. According to the State, that restriction falls squarely within the intent of the regulation's enabling statute, *N.J.S.A.* 18A:30–3.5. The State also contends that *N.J.S.A.* 18A:30–3.6 did not supersede the enabling act. Instead, the State submits that the newer statute expanded the cap on sick leave to additional employees.

Second, the State argues that the Appellate Division erred when it held that the tenure laws prevent the challenged regulations from being applied to tenured assistant superintendents. The State maintains that the Legislature can modify conditions of public service, absent constitutional restrictions, as the panel in *NJASBO* concluded. The State also contends that the Appellate Division incorrectly adopted an expansive definition of "compensation" under the tenure law, which would prevent the Legislature from curbing abuses.

Respondents agree that the sick leave cap protects payments for leave valued at more than $15,000 which have already been

accumulated. But respondents claim that the regulation impermissibly bars payment to an estate or beneficiary if an employee dies before retirement. They argue that accumulated unused sick leave is earned compensation that should pass to an estate or beneficiary. They also contend that the Legislature repealed the regulation and its enabling statute by enacting *N.J.S.A.* 18A:30–3.6.

Respondents maintain that the Appellate Division's broad construction of "compensation" under the tenure statute was correct. They also challenge and distinguish case law that the State relies on to argue that the Legislature can modify the terms and conditions of public service by statute.

Finally, respondents ask this Court to clarify that the challenged regulations apply only to new contracts and not contracts that are automatically renewed under *N.J.S.A.* 18A:17–20.1.

## III.

 Judicial review of agency regulations begins with a presumption that the regulations are both "valid and reasonable." *N.J. Soc'y for the Prevention of Cruelty to Animals v. N.J. Dep't of Agric.*, 196 *N.J.* 366, 385, 955 *A.*2d 886 (2008) (*NJSPCA*) (citation omitted). As a result, the party challenging a regulation has the burden of proving that the agency's action was "arbitrary, capricious or unreasonable." *Henry v. Rahway State Prison*, 81 *N.J.* 571, 579–80, 410 *A.*2d 686 (1980). That inquiry focuses on three things:

(1) whether the agency's action violates the enabling act's express or implied legislative policies; (2) whether there is substantial evidence in the record to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts the agency clearly erred by reaching a conclusion that could not reasonably have been made upon a showing of the relevant factors.

[*In re Petitions for Rulemaking, N.J.A.C. 10:82–1.2 & 10:85–4.1*, 117 *N.J.* 311, 325, 566 *A.*2d 1154 (1989).]

Absent one of those circumstances, appellate courts ordinarily will not reverse an agency's decision, including its adoption of regulations. *NJSPCA, supra,* 196 *N.J.* at 385, 955 *A.*2d 886.

Courts afford an agency "great deference" in reviewing its "interpretation of statutes within its scope of authority and its adoption of rules implementing" the laws for which it is responsible. *Ibid.* (citing *In re Freshwater Wetlands Prot. Act Rules,* 180 *N.J.* 478, 489, 852 *A.*2d 1083 (2004)). That approach reflects the specialized expertise agencies possess to enact technical regulations and evaluate issues that rulemaking invites. *N.J. League of Municipalities v. D.C.A.,* 158 *N.J.* 211, 222, 729 *A.*2d 21 (1999).

To decide whether a particular agency action is authorized, a court "may look beyond the specific terms of the enabling act to the statutory policy sought to be achieved by examining the entire statute in light of its surroundings and objectives." *N.J. Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* 544, 562, 384 *A.*2d 795 (1978). Although a reviewing court should not substitute its judgment for an agency's, *N.J. League of Municipalities, supra,* 158 *N.J.* at 222, 729 *A.*2d 21, courts must invalidate a regulation that is " 'inconsistent with the statute it purports to interpret,' " *NJSPCA, supra,* 196 *N.J.* at 385, 955 *A.*2d 886 (quoting *Smith v. Dir., Div. of Taxation,* 108 *N.J.* 19, 26, 527 *A.*2d 843 (1987)).

When interpreting an enabling statute or any other law, a court's obligation is to determine and give effect to the Legislature's intent. *Allen v. V & A Bros., Inc.,* 208 *N.J.* 114, 127, 26 *A.*3d 430 (2011). To perform that task, courts look first to the plain language of the statute. *DiProspero v. Penn,* 183 *N.J.* 477, 493, 874 *A.*2d 1039 (2005). If it is clear, the court's task is complete. *In re Young,* 202 *N.J.* 50, 63, 995 *A.*2d 826 (2010). If the statutory language is ambiguous, courts may look to extrinsic evidence, including legislative history, for guidance. *Burnett v. Cnty. of Bergen,* 198 *N.J.* 408, 421, 968 *A.*2d 1151 (2009).

## IV.

Against that familiar backdrop, we examine the regulations the Commissioner promulgated. We note at the outset certain important points that are not in dispute and are discussed in greater detail below: the regulations apply only to *new* contracts and amendments for superintendents, assistant superintendents, and other high-level officials. *See N.J.A.C.* 6A:23A–3.1(a). The new rules do not affect existing agreements or alter terms of employment retroactively. Likewise, the statute capping sick leave payments applies purely prospectively. *See N.J.S.A.* 18A:30–3.5.

### A.

We begin with the statute and regulation capping sick leave payments. *See N.J.S.A.* 18A:30–3.5; *N.J.A.C.* 6A:23A–3.1(e)(6). The Appellate Division struck the regulation based on a mistaken reading of the enabling statute. The parties agree that the statute and regulation allow payment for unused sick leave that had already been accumulated, or would be accumulated under an existing contract, and was valued at greater than $15,000. We agree as well.

The enabling statute provides, in part:

> Notwithstanding any law, rule or regulation to the contrary, a board of education, or an agency or instrumentality thereof, shall not pay supplemental compensation to any officer or employee for accumulated unused sick leave in an amount in excess of $15,000, except that an officer or employee who:
>
> (1) on the effective date of P.L.2007, c.92 (C.43:15C–1 et al.), or upon the expiration of a collective negotiations agreement or contract of employment applicable to that officer or employee in effect on that date has accrued supplemental compensation based upon accumulated unused sick leave shall, upon retirement, be eligible to receive for any unused leave not more than the amount so accumulated or not more than $15,000, whichever is greater; or
>
> (2) becomes an officer or employee after the effective date of P.L.2007, c.92 (C.43:15C–1 et al.) and has previously accrued supplemental compensation based upon accumulated unused sick leave shall, upon retirement, be eligible to receive for any unused leave not more than the amount so previously accumulated or not more than $15,000, whichever is greater.
>
> [*N.J.S.A.* 18A:30–3.5.]

 The statute thus sets a $15,000 cap for payout of unused sick leave but also provides two important exceptions. Employees who have already accumulated unused sick leave worth more than $15,000 as of June 8, 2007, the law's effective date, or who will surpass or continue to surpass the cap by the time an existing collective bargaining agreement or contract expires, will be eligible to receive "the amount so accumulated or not more than $15,000, whichever is greater." *Ibid.*

In other words, the statute does not deprive officials of any property already earned, and it protects existing contract rights. Beyond any contractual agreements, respondents cannot claim a protected property right under state law to unlimited payment for sick leave time that has not yet accrued. *See Carter v. City of Philadelphia*, 989 *F.*2d 117, 120 (3d Cir.1993) (requiring plaintiff to demonstrate entitlement to property interest under state law or regulation, among other sources, for benefit to be recognized as property and be subject to constitutional protection); *J.E. ex rel. G.E. v. State*, 131 *N.J.* 552, 563, 622 *A.*2d 227 (1993) (noting that state law creates and defines entitlement to constitutionally protected property claim). As a result, the prospective sick leave cap is a valid exercise of legislative authority.

The sick leave regulation tracks the enabling statute. It expressly states that "[c]ontractual provisions regarding accumulation of sick leave and supplemental compensation for accumulated sick leave *shall be consistent with N.J.S.A.* 18A:30–3.5." *N.J.A.C.* 6A:23A–3.1(e)(6) (emphasis added). Thus, the agency's new rule is also prospective and does not interfere with any contract or property rights.

### B.

 Respondents also argue that to the extent the sick leave regulation improperly bars payment to an estate or beneficiary if an employee dies before retirement, the regulation cannot be sustained. We disagree and conclude that the regulation is consistent with its enabling statute.

*N.J.S.A.* 18A:30–3.5 provides that "[s]upplemental compensation [for unused sick leave] shall be payable *only at the time of retirement* from a State-administered or locally-administered retirement system based on the leave credited on the date of retirement." (Emphasis added). The act's plain language focuses on "retirement" and not "death" or any other type of separation from employment. By contrast, a statute adopted at the same time, as part of the same legislation, contained no comparable limitation as it addressed payment to school officials for accrued vacation leave. *Cf. N.J.S.A.* 18A:30–9.

Following basic rules of statutory construction, we presume that the Legislature intended that distinction. *See Rodriguez v. United States,* 480 *U.S.* 522, 525, 107 *S.Ct.* 1391, 1393, 94 *L.Ed.*2d 533, 537 (1987) ("[When] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citation and internal quotation marks omitted); *GE Solid State, Inc. v. Dir., Div. of Taxation,* 132 *N.J.* 298, 308, 625 *A.*2d 468 (1993). The Legislature's decision to limit payment to "the time of retirement" is therefore entitled to meaning.

The respective regulations flow from their enabling statutes. Section (e)(6) states that "[s]upplemental payment for accumulated sick leave shall be payable only at the time of retirement and shall not be paid to the individual's estate or beneficiaries in the event of the individual's death prior to retirement." *N.J.A.C.* 6A:23A–3.1(e)(6). The corresponding regulation relating to unused vacation leave provides that "[s]upplemental payments ... shall be payable at the time of separation and may be paid to the individual's estate or beneficiaries in the event of the individual's death prior to separation." *N.J.A.C.* 6A:23A–3.1(e)(7).

We conclude that the restriction in section (e)(6) is not arbitrary or capricious. It adheres to the express policy set forth in the enabling statute—that payment for unused sick leave can be made only in connection with retirement. *See N.J.S.A.* 18A:30–3.5.

Because the enabling statute is unambiguous, it is not necessary to consider the legislative history. That history, though, is instructive. As discussed above, the Public Employee Benefits Reform Committee recommended that the Legislature limit the amount of accumulated sick leave *"payable upon retirement"* to $15,000. J. Legis.Comm. on Pub. Emp. Benefits Reform, *supra,* at 142 (emphasis added). The recommendation was meant to "bring supplemental compensation for accumulated unused sick leave in line with the current law and practice for State employees...." *Id.* at 143.

Other state employees are "entitled upon retirement" to receive payment for unused sick leave. *N.J.S.A.* 11A:6–16. For clarification, a related statute explains that "[i]f an employee dies after the effective date of retirement but before payment is made, payment shall be made to the employee's estate." *N.J.S.A.* 11A:6–19. If payments could be made to an estate whenever an employee died, the latter law would be meaningless. And "[l]egislative language must not, if reasonably avoidable, be found to be inoperative, superfluous or meaningless." *Franklin Tower One, L.L.C. v. N.M.,* 157 *N.J.* 602, 613, 725 *A.*2d 1104 (1999) (citations and internal quotation marks omitted). In addition, *N.J.A.C.* 4A:6–3.1(b)(4) provides that employees "whose separation from employment is not based on retirement[ ] shall not be eligible for [supplemental compensation upon retirement]." *See also N.J.A.C.* 4A:6–3.3 & –3.5 (referring to sick leave in computation of "supplemental compensation upon retirement").

For comparison purposes once again, we note that payment may be made to the estate of a deceased employee who had accumulated vacation leave, under *N.J.S.A.* 11A:6–4. That statute, unlike its counterpart governing sick leave, does not connect payment for unused vacation leave to retirement. As such, there was no need for a separate law providing for payments to an estate if an employee died after retirement, and no such law exists.

The above statutory structure was in place when the Public Employee Benefits Reform Committee recommended bringing

school employees' sick leave benefits in line with the benefits afforded other state employees. Respondents, however, contend that because no case law addresses whether payments can be made to other state employees for unused sick leave under *N.J.S.A.* 11A:6–16 if an employee dies before retirement, that issue is an open question. Because we conclude that the language of *N.J.S.A.* 18A:30–3.5 is clear, we do not need to answer that question definitively. Instead, we simply note that the Legislature reasonably believed it was limiting payments for unused sick leave to an employee's retirement when it enacted *N.J.S.A.* 18A:30–3.5.

Respondents also argue that payment for accrued sick leave is compensation that has been earned. They submit it must be considered a property right that passes to the estate of a school official who dies before retirement, just as his or her last paycheck would. For support, respondents rely on *Caponegro v. State Operated School District of the City of Newark,* 330 *N.J.Super.* 148, 156, 748 *A.*2d 1208 (App.Div.2000).

Their reliance is misplaced for the reasons the Appellate Division explained in *NJASBO. See NJASBO, supra,* 409 *N.J.Super.* at 491, 978 *A.*2d 295. In *Caponegro,* the state's takeover of a school district abolished plaintiffs' positions. The court found they were nonetheless entitled to payment for accumulated leave under certain contract theories. *Caponegro, supra,* 330 *N.J.Super.* at 156–57, 748 *A.*2d 1208. Section (e)(6), though, does not affect any rights under existing contracts. *See N.J.S.A.* 18A:30–3.5; *N.J.A.C.* 6A:23A–3.1(e)(6). *Caponegro,* therefore, does not advance respondent's claim.

## C.

Finally, the State argues that *N.J.S.A.* 18A:30–3.6, enacted in 2010, did not supersede or repeal the enabling statute for the cap on sick leave payments, at *N.J.S.A.* 18A:30–3.5. We agree. As a result, the previously imposed cap that limited payments to high-level officers is not moot.

▪ Whenever statutory analysis "involves the interplay of two or more statutes, we seek to harmonize [them], under the assumption that the Legislature was aware of its actions and intended" for related laws "to work together." *State ex rel. J.S.*, 202 *N.J.* 465, 480, 998 *A.*2d 409 (2010) (citations omitted). With that aim in mind, we examine the newer law.

*N.J.S.A.* 18A:30–3.6 provides as follows:

> Notwithstanding any law, rule or regulation to the contrary, a board of education, or an agency or instrumentality thereof, shall not pay supplemental compensation to any officer or employee for accumulated unused sick leave in an amount in excess of $15,000. Supplemental compensation shall be payable only at the time of retirement from a State-administered or locally-administered retirement system based on the leave credited on the date of retirement. This provision shall apply only to officers and employees who commence service with the board of education, or the agency or instrumentality thereof, on or after the effective date [May 21, 2010] of P.L.2010, c.3. This section shall not be construed to affect the terms in any collective negotiations agreement with a relevant provision in force on that effective date.

[*N.J.S.A.* 18A:30–3.6.]

We conclude that the more recent law, *N.J.S.A.* 18A:30–3.6, did not supersede *N.J.S.A.* 18A:30–3.5 for a number of reasons. To begin with, the newer statute does not expressly repeal *N.J.S.A.* 18A:30–3.5. The more recent law's generic introductory phrase— "[n]otwithstanding any law, rule or regulation to the contrary"— does not operate as an express repeal of *N.J.S.A.* 18A:30–3.5. *See N.J. State Policemen's Benevolent Ass'n v. Town of Morristown*, 65 *N.J.* 160, 164, 320 *A.*2d 465 (1974) ("While it is not essential to identify a specific provision in order to effect its express repeal, it is necessary to describe the provision with reasonable certainty.").

▪ Nor does the newer statute repeal *N.J.S.A.* 18A:30–3.5 by implication. "[T]here is a strong presumption in the law against implied repealers and every reasonable construction should be applied to avoid such a finding." *In re Comm'r of Ins.'s Issuance of Orders A–92–189 & A–92–212*, 137 *N.J.* 93, 99, 644 *A.*2d 576 (1994) (citing *Mahwah Twp. v. Bergen Cnty. Bd. of Taxation*, 98 *N.J.* 268, 281, 486 *A.*2d 818, *cert. denied*, 471 *U.S.* 1136, 105 *S.Ct.* 2677, 86 *L.Ed.*2d 696 (1985)). To overcome that

presumption, a high threshold must be vaulted: "a repeal by implication requires clear and compelling evidence of legislative intent, and such intent must be free from reasonable doubt." *Ibid.* (citing *Mahwah Twp., supra,* 98 *N.J.* at 280, 486 *A.*2d 818).

The legislative history for *N.J.S.A.* 18A:30–3.6 reveals that the Senate and Assembly meant to expand the sick leave cap in *N.J.S.A.* 18A:30–3.5 to cover a greater number of employees. Four bipartisan leaders from both houses introduced the newer law on February 8, 2010. The sponsors' statement attached to the bill explained that

> [t]his bill provides that supplemental compensation for accumulated unused sick leave payable to *any local government or school district officer or employee* cannot exceed $15,000 and can only be paid at the time the officer or employee retires....
>
> Current law limits to $15,000 the maximum amount that may be paid to a State employee for accumulated unused sick leave when the employee retires. However, *there is currently no such limit with regard to local government and to school district officers or employees, except with regard to certain high level local government and school district officers.*
>
> [S. 4 (Sponsors' Statement), 214th Leg. 14–15 (N.J. Feb. 8, 2010) (emphasis added).]

Ten days later, the Senate Committee considering the bill issued a nearly identical statement. *See* S. State Gov't, Wagering, Tourism & Historic Pres. Comm., *Statement to S. 4,* 214th Leg. 1 (N.J. Feb. 18, 2010). Both statements demonstrate that the Legislature intended to extend sick leave caps beyond the high-level school officials already covered. Nothing in the statements suggests the Legislature meant to repeal the existing cap on high-level officers in *N.J.S.A.* 18A:30–3.5.

In an effort to harmonize the two statutes and give effect to both, we compare their terms. Two differences between the statutes surface, and they are not irreconcilable. The first relates to the period of employment the statutes cover. The newer law, *N.J.S.A.* 18A:30–3.6, only applies to officers and employees who *begin* working on or after May 21, 2010. It does not address officials hired beforehand who remain employed and are covered under the older statute, *N.J.S.A.* 18A:30–3.5.

Second, the older statute extends to a narrow category of high-level officers, and the later law more broadly covers all school employees. In simple language, the newer statute applies to "any officer or employee" of "a board of education or an agency or instrumentality thereof." *N.J.S.A.* 18A:30-3.6.

The language in *N.J.S.A.* 18A:30-3.5 is not as clear. It also extends to officers and employees of school boards or their agencies, but the act goes on to define "officer or employee" as follows:

an elected official; or a person appointed by the Governor with the advice and consent of the Senate, or appointed by the Governor to serve at the pleasure of the Governor only during his or her term of office; or a *person appointed by an* elected public official or *elected governing body of the political subdivision,* with the specific consent or approval of the elected governing body of the political subdivision that is substantially similar in nature to the advice and consent of the Senate for appointments by the Governor of the State as that similarity is determined by the elected governing body and set forth in an adopted resolution, pursuant to guidelines or policy that shall be established by the Department of Education, but *not including a person who is employed or appointed in the regular or normal course of employment or appointment procedures and* consented to or *approved in a general or routine manner* appropriate for and followed by the political subdivision, or the agency or instrumentality thereof.
[*N.J.S.A.* 18A:30-3.5 (emphasis added).]

The Appellate Division concluded that the above definition encompassed superintendents and assistant superintendents. *NJASA, supra,* 414 *N.J.Super.* at 557-58, 999 *A.*2d 535. It relied heavily on the reasoning in *NJASBO,* which involved an appeal by school business administrators who challenged some of the same regulations that respondents did. *See NJASBO, supra,* 409 *N.J.Super.* at 471, 978 *A.*2d 295.

*NJASBO* carefully examined the statutory language and determined that it included school business administrators. Judge Grall, writing for the panel, explained that "the phrase 'elected governing body of the subdivision' can be understood to refer to the board of education as the governing body of the school district." *Id.* at 486, 978 *A.*2d 295. School boards, in turn, appoint business administrators. Those appointments, the panel reasoned, do not fall within the statutory exception for general or routine

appointments—underscored above—because school board administrators must be approved by the Commissioner and State board under *N.J.S.A.* 18A:17–14.1. *Id.* at 488–89, 978 *A.*2d 295.

The Appellate Division in this case focused on *N.J.S.A.* 18A:17–15, which similarly requires that certain superintendents be approved by the Commissioner and State board. *NJASA, supra,* 414 *N.J.Super.* at 558, 999 *A.*2d 535. For the same reasons, the panel concluded that *N.J.S.A.* 18A:30–3.5 encompassed them. *Ibid.* Although assistant superintendents are not subject to that level of approval, *see N.J.S.A.* 18A:17–16, the panel found that "to exclude assistant superintendents would frustrate the legislative purpose while including them furthers that purpose." *Ibid.* For that reason, the panel refused to set aside the regulation as to assistant superintendents. *Ibid.* (citations omitted). The same logic would apply to superintendents whose appointments do not require approval at the State level. *See N.J.S.A.* 18A:17–15.

Under respondents' reading of *N.J.S.A.* 18A:30–3.5, the law applies neither to superintendents, assistant superintendents, nor school business administrators. (Respondents presented this argument before *NJASBO* was decided.) We cannot accept that the Legislature intended to enact a law that applied to no one. *See Hubbard ex rel. Hubbard v. Reed,* 168 *N.J.* 387, 392–93, 774 *A.*2d 495 (2001) (rejecting literal interpretations of statutory terms that would lead to results inconsistent with statute's overall purpose).

Because the section in *N.J.S.A.* 18A:30–3.5 that defines "officers and employees" is not a model of clarity, the legislative history is particularly helpful. The Legislature enacted the statute in the wake of reports by two of its own committees, which highlighted excessive benefits for school administrators in general, and excessive payments for unused sick leave in particular. *See* J. Legis. Comm. on Gov't Consolidation and Shared Servs., *supra,* at 55; J. Legis. Comm. on Pub. Emp. Benefits Reform, *supra,* at 142–43. As detailed above, when the Legislature later adopted *N.J.S.A.* 18A:30–3.6, it intended to impose a sick leave cap on school employees *beyond* the "high level ... school district officers"

already covered. *See* Sponsors' Statement, *supra,* at 14–15; S. State Gov't, Wagering, Tourism & Historic Pres. Comm. Statement, *supra,* at 1. We can find no indication that the Legislature instead sought to relieve high-level administrators of the existing sick leave cap.

Accordingly, we read *N.J.S.A.* 18A:30–3.6 as an expansion of the sick leave cap imposed in *N.J.S.A.* 18A:30–3.5 and not as an express or implied repeal of prior law.[3]

## V.

Finally, we find that the tenure statutes do not bar the regulations in question. *See N.J.A.C.* 6A:23A–3.1(e)(3)–(6).

Assistant superintendents may get tenure under *N.J.S.A.* 18A:28–5 after serving for a period of years.[4] That statute also provides that tenured school employees, "during good behavior and efficiency, ... shall not be dismissed or *reduced in compensation* except for inefficiency, incapacity, or conduct unbecoming such a teaching staff member or other just cause...." *Ibid.* (emphasis added); *see also N.J.S.A.* 18A:6–10 ("No person shall be dismissed or reduced in compensation, (a) if he is or shall be under tenure of office, position or employment during good behavior and efficiency in the public school system of the state....").

The Legislature made that policy judgment when it enacted the tenure statutes. It can also modify the terms and conditions of

---

[3] We respect the contrary view expressed in dicta by the federal District Court that *N.J.S.A.* 18A:30–3.5 does not cover superintendents, assistant superintendents or school business administrators. The unpublished, non-precedential opinion is not binding on this Court. *See R.* 1:36–3; *see also Montana v. Wyoming,* ── U.S. ──, ──, 131 S.Ct. 1765, 1773 n.5, 179 L.Ed.2d 799, 807 n.5 (2011) (observing that state courts are the final arbiter of state law). We note that when the District Court issued its opinion, it did not have the benefit of *NJASBO* or the legislative history relating to *N.J.S.A.* 18A:30–3.6.

[4] We accept the parties' representations at oral argument that tenured assistant superintendents are employed, or are supposed to be employed, pursuant to employment contracts.

public service by enacting new laws that reflect new policies—unless the State Constitution says otherwise.

This Court discussed that principle in *Spina v. Consolidated Police and Firemen's Pension Fund Commission*, 41 *N.J.* 391, 197 *A.*2d 169 (1964). In *Spina*, members of a State pension plan challenged legislation that raised the plan's minimum retirement age and increased the required years of service. *Id.* at 393, 197 *A.*2d 169. In rejecting the challenge, the Court found that the prior statute did not give rise to a contract. *Id.* at 400, 197 *A.*2d 169. It also noted that "the general approach in our State [is] that the terms and conditions of public service in office or employment rest in legislative policy rather than contractual obligation, and hence may be changed except of course insofar as the State Constitution provides otherwise." *Ibid.* (citations omitted).

The Appellate Division recently relied on *Spina* as it addressed some of the same regulations at issue in this case. *See NJASBO, supra,* 409 *N.J.Super.* at 490, 978 *A.*2d 295. The *NJASBO* court rejected a challenge by school business administrators who claimed that the regulations violated the tenure statutes. As the panel explained, "[o]ur courts have long recognized [ ] that absent constitutional restriction, the Legislature may modify terms and conditions of public service." *Ibid.* (citing *Spina, supra,* 41 *N.J.* at 400, 197 *A.*2d 169). In *NJASBO,* the panel found that

> the Legislature has authorized the Commissioner to adopt standards prospectively limiting the award of excessive benefits to school administrators, while preserving the administrators' rights to collect payments for prior unused leave acquired under prior contracts. The tenure law and this regulation prospectively modifying permissible payments for unused leave, which is authorized by statute, can and must be harmonized. So construed, the tenure law does not prohibit this limitation on benefits, which is authorized by more recent statutes....
>
> [*Ibid.* (internal citation omitted).]

In this case, once again, we are faced with a situation in which the Legislature provided specific direction to the Commissioner to adopt regulations that would curtail abuses and cut administrative costs; the Commissioner followed suit; and new regulations apply prospectively to future contracts. The statute and regulations before us thus set future terms and conditions of public employ-

ment, but they do not present constitutional concerns. Executive county superintendents are only to apply the regulations as they review new agreements, so no existing contracts will be impaired.[5] To the extent certain benefits had already accumulated, the regulations protected them. *See, e.g., N.J.A.C.* 6A:23A–3.1(e)(6). In addition, tenured assistant superintendents cannot claim a constitutionally protected property right under state law to future contract terms. *See Carter, supra,* 989 *F.*2d at 120; *J.E. ex rel. G.E., supra,* 131 *N.J.* at 563, 622 *A.*2d 227.

Like the Appellate Division in *NJASBO,* we believe that the tenure laws and the Legislature's recent changes to the terms of public service can and should be harmonized. *See NJASBO, supra,* 409 *N.J.Super.* at 490, 978 *A.*2d 295 (citing *Bd. of Educ. of Sea Isle City v. Kennedy,* 196 *N.J.* 1, 12–17, 951 *A.*2d 987 (2008)). It is of no moment that the Legislature enacted new statutes in Title 18A instead of directly amending the tenure provisions in that Title. We read both statutes and the relevant regulations together to give them their intended effect. *See State ex rel. J.S., supra,* 202 *N.J.* at 480, 998 *A.*2d 409.

The parties also differ about the Appellate Division's analysis of the term "compensation" in *N.J.S.A.* 18A:28–5. In light of our

---

[5] *N.J.A.C.* 6A:23A–3.1(a) provides that executive county superintendents shall review and approve

1. New employment contracts, including contracts that replace expired contracts for existing tenured and non-tenured employees;

2. Renegotiations, extensions, amendments, or other alterations of the terms of existing employment contracts that have been previously approved by the Executive County Superintendent; and

3. Provisions for contract extensions where such terms were not included in the original employment contract or are different from the provisions contained in the original approved employment contract.

The regulations do not address whether an employment contract that is automatically renewed is a "new" contract subject to review. *See N.J.S.A.* 18A:17–20.1. For the first time in this case, respondents now ask this Court to address that issue. We decline to speculate about how the Commissioner might treat the question and refrain from offering an advisory opinion. *See G.H. v. Twp. of Galloway,* 199 *N.J.* 135, 136, 971 *A.*2d 401 (2009) (citations omitted).

conclusion that the Legislature had the authority to modify the terms of public service in the manner it did, it is not necessary to address that dispute.

## VI.

For the reasons stated above, we uphold the regulations issued by the Commissioner at *N.J.A.C.* 6A:23A–3.1(e)(3)–(6) and conclude that *N.J.S.A.* 18A:30–3.6 did not supersede *N.J.S.A.* 18A:30–3.5. We therefore reverse the judgment of the Appellate Division insofar as it differs from those determinations.

*For reversal*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, HOENS and PATTERSON—5.

*Not Participating*—Judge WEFING (temporarily assigned).