NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1694-12T3
            A-1695-12T3
            A-2494-12T3
            A-2689-12T3

IN RE PETITION OF BOFI FEDERAL
BANK TO ASSIGN LOTTERY PRIZE
PAYMENT RIGHTS OF MICHELLE A.
GLOVER PURSUANT TO N.J.S.A.
5:9-13.

_____

IN RE PETITION OF BOFI FEDERAL
BANK TO ASSIGN LOTTERY PRIZE
PAYMENT RIGHTS OF RACHAEL
ELMORE PURSUANT TO N.J.S.A.
5:9-13.

_____

IN RE PETITION OF BOFI FEDERAL
BANK TO ASSIGN LOTTERY PRIZE
PAYMENT RIGHTS OF RICHARD HAAS
PURSUANT TO N.J.S.A. 5:9-13.

_____

IN RE PETITION OF BOFI FEDERAL
BANK TO ASSIGN LOTTERY PRIZE
PAYMENT RIGHTS OF DEANNE
MCMILLION PURSUANT TO N.J.S.A.
5:9-13.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| October 3, 2014 |
| APPELLATE DIVISION |

Argued September 9, 2014 — Decided October 3, 2014

Before Judges Reisner, Koblitz and Higbee.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket Nos. L-2122-12, L-2405-12, L-1793-12 and L-2406-12.

Douglas K. Eisenstein of the New York bar, admitted pro hac vice, argued the cause for appellant BofI Federal Bank (Bressler, Amery & Ross, P.C., attorneys; Heather A. Novison, on the briefs).

Jonathan B. Peitz, Deputy Attorney General, argued the cause for respondent State of New Jersey, Division of State Lottery (John J. Hoffman, Acting Attorney General, attorney; Lewis A. Scheindlin, Assistant Attorney General, of counsel; Mr. Peitz, on the brief).

The opinion of the court was delivered by

HIGBEE, J.S.C. (temporarily assigned).

BofI Federal Bank (BofI) filed petitions seeking approval of the assignment of certain New Jersey State Lottery payments from four separate prize winners. The four petitions were heard and denied by three different judges pursuant to N.J.A.C. 17:20-7.9(j), which states that "no one shall have the right to assign prize payments due during the last two years of the annuity term." BofI argued in each case, and now contends in this consolidated appeal, that N.J.A.C. 17:20-7.9(j) is invalid because it is in conflict with and impermissibly enlarges the controlling statute N.J.S.A. 5:9-13, which regulates the assignment of the final two years of prize payments.

We find N.J.A.C. 17:20-7.9(j), as promulgated by the New Jersey Division of State Lottery, is valid, and effectuates the legislative intent of N.J.S.A. 5:9-13. We therefore affirm all four decisions of the Law Division judges.

The relevant facts of each of the four cases are similar. Richard Haas won the Win for Life instant game on March 5, 1998. Under the rules of the game, he became entitled to a guaranteed prize of $1,000,000 payable in quarterly installments through the year 2016. Following the guaranteed portion of the annuity, he will receive quarterly payments for his lifetime.

Michelle Glover, Rachael Elmore, and Deanne McMillion were also winners of the Win for Life game and received the same type of payments. BofI unsuccessfully petitioned the court in each case to obtain assignment of the last two years of guaranteed quarterly payments. Each of these petitions were denied by the trial judges.[1]

Legislative history sets the framework for our decision. The New Jersey State Lottery was established by N.J.S.A. 5:9-4

---

[1] In the case of Richard Haas, the original trial judge granted the petition. The State Lottery Division filed a timely motion for reconsideration. Judge Anthony M. Massi, to whom the case had been reassigned, granted the motion to reconsider and denied the petition. BofI has appealed the decision to allow reconsideration, but we find this portion of the appeal is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

on February 16, 1970, and is governed by N.J.S.A. 5:9-1 to -25. When the legislation was first enacted, a State Lottery Division was created in the Department of Treasury. A State Lottery Commission was also created within the Department as defined by N.J.S.A. 5:9-3. Instead of establishing specific games of chance with set rules and prizes, the Legislature gave this power to the Commission. See N.J.S.A. 5:9-7. The purpose for creating the lottery was to provide economic benefit to State institutions and provide State aid for education. N.J.S.A. 5:9-2. Particularly relevant here, the statutes did not initially allow for assignment of lottery prizes. However, the law was amended in 1998.

The controlling statute states a lottery prize "shall not be assignable except as permitted by this section." N.J.S.A. 5:9-13(a), as amended. There are numerous requirements before an assignment can be approved. Moreover, under N.J.S.A. 5:9-13(d), a court order necessitating compliance with those requirements is a prerequisite to assignment. Ibid. Clearly, the Legislature was concerned about assignments of lottery winnings, and wanted them carefully controlled.

The most relevant part of the statute in this appeal is N.J.S.A. 5:9-13(h), which states "[a] winner shall not be permitted to assign the last two annual prize payments." To

this, BofI responds that the payments in these cases are not "annual" payments but "quarterly" payments, and are therefore outside the language of the statute. We disagree.

The Commission set up the payments for the guaranteed annuity in the Win for Life games to be paid quarterly as it was authorized to do. Previously, the Commission had promulgated as part of its regulation of the lottery N.J.A.C. 17:20-7.9(j), which interpreted N.J.S.A. 5:9-13(h). In that respect, the regulation clarified that any assignment of winnings paid during the last two years of an annuity was prohibited regardless of whether the payments were made yearly, monthly, quarterly or weekly. It is this regulation we are asked to find invalid.

There are two steps in evaluating whether an agency regulation clarifies an ambiguous statute, conflicts with it, or impermissibly expands it. First, we look to the plain language. If it is clear, our task is complete. N.J. Ass'n of School Adm'rs v. Schundler, 211 N.J. 535, 549 (2012). Second, if the language is ambiguous, "courts may look to extrinsic evidence." Ibid. (quoting Burnett v. Cnty of Bergen, 198 N.J. 408, 421 (2009)).

With that in mind, we approach the validity of agency regulations with deference to the expertise of the agency. "Regulations adopted by administrative agencies are accorded

substantial deference provided they are consistent with the governing statutes' terms and objectives." State Dept. of Labor, 395 N.J. Super. 394, 406 (App. Div. 2007).

The games offered, the amount of the prize, and the frequency of payments were delegated by the Legislature to the discretion of the Commission to fulfill the purpose of the statutes. While N.J.S.A. 5:9-13 may, at first, appear clear and unambiguous, the New Jersey Supreme Court has found that the meaning of a statute, "in light of related legislation and of surrounding facts and circumstances" may render what appeared to be a clear meaning ambiguous. Watt v. Mayor & Council of Franklin, 21 N.J. 274, 277-78 (1956).

First, we note that the word "annual" could be defined as an adjective that describes an event as occurring once a year, such as an annual report or an annual event, as argued by BofI. However, "annual" is also commonly used as an adjective to describe something calculated over or covering a period of a year. For example, "annual income" and "an annual rate of increase." In fact, property owners regularly pay their annual real estate taxes in quarterly payments. See N.J.S.A. 54:4-66a. In the Haas case, Judge Massi found that the Win for Life payments are annual payments made on a quarterly basis. We agree that the word "annual" is not always limited to payments

made only once a year, and therefore not, as BofI argues, a completely unambiguous term.  Since there is some ambiguity, we look to the intent and purpose of the legislation.

In State v. Spindel, 24 N.J. 395, 403 (1957), the Supreme Court held "the intention is to be taken or presumed according to what is consonant to reason and good discretion," and in New Jersey Builders, Owners & Managers Ass'n v. Blair, the Court held

> [i]t is the proper function, indeed the obligation, of the judiciary to give effect to the obvious purpose of the Legislature, and to that end words used may be expanded or limited according to the manifest reason and obvious purpose of the law.  The spirit of the legislative direction prevails over the literal sense of the terms.
>
> [60 N.J. 330, 340 (1972) (quoting Alexander v. N.J. Power & Light Co., 21 N.J. 373, 378 (1956)) (internal quotations omitted).]

All parties have agreed that one purpose of N.J.S.A. 5:9-13(h) was to promote collection of delinquent child support and debts owed to the State.  By prohibiting assignment of the last two years of annual payments, the statute guarantees that if money is owed by the winner for child support, college loans, taxes, or welfare liens, the State will have the opportunity to collect what is owed before the money is gone.  If the winner dies before the end of the guaranteed payments in the Win for Life game, the last two years of guaranteed payments will be the

last two years of payments from which money owed could be collected. The legislative intention to preserve the last two years of payments for the payment of any outstanding debts incurred by the winner would be defeated if the statute is interpreted to not include the last two years of quarterly payments.  While none of these four winners owes money now, the statute seeks to protect the State from losses due to debts that may be incurred and owed in the future when these last two years of payments are received.

N.J.A.C. 17:20-7.9(j) is a sound clarification of the law that promotes the purpose of the enabling statute, N.J.S.A. 5:9-13(h).

We affirm the denial of the petitions in all four cases.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION