NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3158-15T4

NEW JERSEY EDUCATION ASSOCIATION,

 Appellant,

 v.

BOARD OF TRUSTEES OF THE TEACHERS'
PENSION AND ANNUITY FUND,

 Respondent.
_________________________________________________________

 Submitted June 26, 2017 – Decided July 13, 2017

 Before Judges Fisher and Fasciale.

 On appeal from the Administrative Action of
 the Board of Trustees of the Teachers' Pension
 and Annuity Fund in adopting N.J.A.C. 17:3-
 5.5 and N.J.A.C. 17:3-6.1.

 Zazzali, Fagella, Nowak, Kleinbaum & Friedman,
 attorneys for appellant (Jason E. Sokolowski
 and Richard A. Friedman, of counsel; Mr.
 Sokolowski, Mr. Friedman, and Kaitlyn E.
 Dunphy, on the brief).

 Christopher S. Porrino, Attorney General,
 attorney for respondent (Melissa H. Raksa,
 Assistant Attorney General, of counsel; Amy
 Chung, Deputy Attorney General, on the brief).

PER CURIAM
 Appellant New Jersey Education Association (NJEA) seeks our

review of final agency action taken by respondent Board of

Trustees, Teachers' Pension and Annuity Fund (the Board)1 in

adopting, on November 16, 2015, amendments to N.J.A.C. 17:3-5.5,

and N.J.A.C. 17:3-6.1.

 Before turning to the specifics of this appeal, we first take

note of our standard of review, which allows us to consider whether

an agency's interpretation of a statutory scheme is permissible

in light of the legislative limits and intended goals, In re

Adoption of N.J.A.C. 7:26B, 128 N.J. 442, 450 (1992), but with the

understanding that courts must start "with a presumption," N.J.

Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 548 (2012), that

properly-adopted regulations "are valid and reasonable," N.J. Soc.

for Prevention of Cruelty to Animals v. N.J. Dep't of Agriculture,

196 N.J. 366, 385 (2008). That is, we must "give substantial

deference" to an agency's interpretation of "a statute that the

agency is charged with enforcing" so long as its interpretation

"is not plainly unreasonable." Matturri v. Bd. of Trs., Judicial

Ret. Sys., 173 N.J. 368, 381-82 (2002). Or, stated another way, a

1
 The Board possesses "general responsibility for the proper
operation" of the Teacher's Pension and Annuity Fund (TPAF) and
for the establishment of "rules and regulations for the
administration and transaction" of its business and for the control
of the TPAF. N.J.S.A. 18A:66-56(a)(1).

 2 A-3158-15T4
legislative delegation of authority to an agency "is to be

liberally construed in order to enable the agency to accomplish

its statutory responsibilities," and "courts should readily imply

such incidental powers as are necessary to effectuate the

legislative intent." N.J. Guild of Hearing Aid Dispensers v. Long,

75 N.J. 544, 562 (1978); see also N.J. State League of

Municipalities v. Dep't of Cmty. Affairs, 158 N.J. 211, 223 (1999).

 I

 With these principles in mind, we turn to NJEA's arguments

about the amendments to N.J.A.C. 17:3-5.5, and, specifically, this

new regulation's manner of dealing with maternity leave.

Initially, the following was the proposed amendment to part of

N.J.A.C. 17:3-5.5(a)(4):

 iii. Maternity leave is considered personal
 illness. Absent physician certification,
 three months is the maximum period of purchase
 for maternity leave. A certification from a
 physician that a member was disabled due to
 pregnancy and resulted in a disability for the
 period in excess of three months is required
 for maternity leave in excess of three months.
 The birth of a child constitutes the start of
 child care leave of absence immediately
 following maternity[.]

After considering the NJEA's comments about this proposal, the

Board adopted a final version that deleted the first sentence

 3 A-3158-15T4
("Maternity leave is considered personal illness") and replaced

that one sentence with the following two sentences:

 Maternity leave may consist of a personal
 illness component and a personal reasons
 component, for childcare. Members who apply
 to purchase any period of maternity leave as
 a personal illness, must provide certification
 from their physician, verifying that the
 member was disabled during the requested
 purchase period, due to pregnancy or
 childbirth.

The revised amendment further altered subsection iii by inserting

the following emphasized words in the second sentence of the

earlier proposal: "Absent physician certification, three months

is the maximum allowable period of purchase for maternity leave

for personal reasons." The revised amendment also deleted the

remainder of the earlier proposal. In short, the adopted version

of subsection iii, in full, is as follows:

 Maternity leave may consist of a personal
 illness component and a personal reasons
 component, for childcare. Members who apply
 to purchase any period of maternity leave as
 a personal illness, must provide certification
 from their physician, verifying that the
 member was disabled during the requested
 purchase period, due to pregnancy or
 childbirth. Absent physician certification,
 three months is the maximum allowable period
 of purchase for maternity leave for personal
 reasons.

 The NJEA challenges this new regulation by arguing it is

"phrased in a manner that does not make plain that it does not

 4 A-3158-15T4
abridge the legal rights afforded to TPAF members in N.J.S.A.

18A:66-8."2 NJEA's stated concern is that, as amended, the

regulation "could be read to narrow a statutory right" and,

therefore, "should be declared invalid by this court" (emphasis

added). The very way NJEA phrases its argument demonstrates its

lack of merit. NJEA does not contend that the regulation actually

stands in conflict with N.J.S.A. 18A:66-8(b), only that the

regulation, in its view, doesn't clearly or plainly avoid a

conflict with the statute.

 These arguments are purely academic because the NJEA only

concerns itself with one possible narrow reading of the new

regulation. Even if we were to entertain these hypothetical

concerns about how the regulation might be interpreted, we view

N.J.A.C. 17:3-5.5(a)(4) as being in accord with the statute. The

particular maternity leave provision that concerns the NJEA –

subsection iii – does not, as the Board asserts in its responding

brief, "articulate any such narrow reading." As the Board contends,

the section in question was "clarified [so] that '[m]aternity

leave may consist of' both a personal illness leave and a personal

2
 In pertinent part, this statute permits a teacher the right to
purchase up to three months of service credit for an unpaid leave
of absence, N.J.S.A. 18A:66-8(b)(1), and up to two years of service
credit for an unpaid leave that is due to personal illness,
N.J.S.A. 18A:66-8(b)(2).

 5 A-3158-15T4
reason leave (for childcare). . . . Nothing could be clearer, and

no statutory right was narrowed or curtailed." We agree.

 II

 NJEA's appeal also concerns a number of facets of the newly-

adopted amendment to N.J.A.C. 17:3-6.1, which deals with the

process for applying for various types of retirement benefits.

NJEA argues that the amendments exceed the Board's authority or

limit TPAF members' existing statutory rights in four ways: (1)

by failing to include a provision that allows a member to apply

for an extension of time; (2) through the inclusion of provisions

which, in NJEA's words, "contradict[] the statutory requirements

for an accidental disability retirement"; (3) by adding to the

statutory requirements an additional requirement that the TPAF

member separate from service in order to qualify for a disability

pension; and (4) by precluding an application for retirement while

a disability application is pending. Keeping in mind the standard

of review, which permits our intervention only when the adopted

regulation is plainly unreasonable or outside the scope of the

Board's delegated authority, we find insufficient merit in NJEA's

arguments to warrant further discussion in a written opinion. R.

2:11-3(e)(1)(E). We add only the following few comments.

 6 A-3158-15T4
 As to the NJEA's first concern, the Board has not taken the

position that applications for extensions are barred by amended

N.J.A.C. 17:3-6.1(b). Instead, the Board recognizes and embraces

its "inherent power," in "the absence of legislative restriction,"

"to reopen or to modify and to rehear orders previously entered

by it." Duvin v. State, 76 N.J. 203, 207 (1978). The failure to

incorporate an express right to seek an extension was not

unreasonable.

 The second alleged cause for concern – that N.J.A.C. 17:3-

6.1(f)(1) is perceived by NJEA as adding an element to those which

a TPAF member must prove to obtain accidental disability retirement

benefits – is belied by the Board's intention, revealed by the

amended regulation, to ensure that such benefits are not awarded

on the basis of preexisting conditions alone or on the basis of

the combination of work effort and preexisting conditions, and to

ensure that the alleged traumatic event directly caused the

disability upon which the application is based. See 47 N.J.R.

2876(a). Far from unreasonable, the amendment conforms to

Richardson v. Bd. of Trs., Police and Firemen's Ret. Sys., 192

N.J. 189 (2007), as NJEA recognizes.

 7 A-3158-15T4
 The NJEA's third concern involves N.J.A.C. 17:3-6.1(f)(3),3

and the NJEA's claim that this regulation "improperly adds a[]

requirement for the receipt of a disability pension," i.e., that

the applicant must discontinue service due to the disability upon

which the application is based. We reject this. When harmonized,

N.J.S.A. 18A:66-39 and N.J.S.A. 18A:66-40(a) render a TPAF member

ineligible for a disability retirement when that member's

employment has been terminated for a non-disability reason;

moreover, NJEA has not demonstrated how the existing legislation

could render a TPAF member, who terminated employment for a non-

disability reason, eligible for a disability retirement. The

amended regulation is not inconsistent with legislative directives

and constitutes a reasonable approach to such circumstances.

3
 As amended, this regulation states:

 Termination of employment, voluntary or
 involuntary, that was caused by any reason
 other than the claimed disability disqualifies
 a member from disability retirement. A member
 whose employment ended after his or her
 employer initiated disciplinary action, or who
 was the subject of criminal or administrative
 charges or party to a settlement resulting in
 resignation or termination, is considered to
 have separated from service as a result of the
 employer action, charges, or settlement, and
 not due to a disability, unless the action,
 charges, or settlement is shown to be a result
 of the disability.

 8 A-3158-15T4
 Lastly, the NJEA contends that N.J.A.C. 17:3-6.1(g)4 is

inconsistent with the statutory framework because it prevents a

TPAF member from applying for retirement benefits while the member

has a disability retirement application pending. Far from

unreasonable, this regulation provides a common sense approach to

those circumstances. A TPAF member is entitled to only one type

of retirement; accordingly, it is appropriate for the Board to

limit that member to one application at a time. We discern no harm

to that limitation, since N.J.A.C. 17:3-6.1(h) permits a TPAF

member who has been denied a disability retirement, but also

qualifies for a service-based retirement, to apply within thirty

days of denial of the former for a service-based retirement if so

eligible.5

4
 This regulation states:

 A member filing for an accidental or ordinary
 disability retirement shall not file a
 separate application for retirement,
 including one based on any other allegedly-
 disabling condition, while the original
 disability application is pending. A separate
 application can be filed only for a date
 subsequent to withdrawal of the previous
 application.
5
 N.J.A.C. 17:3-6.1(h) states:

 If a disability retirement application is
 denied by the Board and the applicant
 qualifies for any other retirement benefit,

 9 A-3158-15T4
Affirmed.

 the applicant will be required to submit a
 separate application for retirement. If the
 applicant submits the separate application for
 retirement within 30 days of the Board's
 decision, the applicant may retain the
 retirement date designated on the disability
 requirement application. If a member is denied
 an accidental disability retirement, but
 qualifies for an ordinary disability
 retirement based on the accidental-disability
 application, the ordinary disability
 retirement will be granted, and no additional
 application will be required.

 10 A-3158-15T4