**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5427-16T2

BOARD OF EDUCATION OF THE
TOWNSHIP OF PISCATAWAY,
MIDDLESEX COUNTY,

      Petitioner-Appellant,

v.

NEW JERSEY DEPARTMENT OF
EDUCATION, OFFICE OF SCHOOL
FINANCE,

      Respondent-Respondent,

and

HATIKVAH INTERNATIONAL
ACADEMY CHARTER SCHOOL, INC.,
and COLLEGE ACHIEVE CENTRAL
CHARTER SCHOOL,

      Intervenors-Respondents.

_____

Argued May 30, 2019 – Decided June 7, 2019

Before Judges Haas, Sumners and Mitterhoff.

On appeal from the New Jersey Department of Education.

David B. Rubin argued the cause for appellant.

Thomas O. Johnston argued the cause for respondents Hatikvah International Academy Charter School, Inc. and College Achieve Central Charter School (Johnston Law Firm, LLC, attorneys; Thomas O. Johnston, of counsel and on the brief; Rula Alzadon Moor, on the brief).

Geoffrey N. Stark, Deputy Attorney General, argued the cause for respondents Commission of Education and the State Board of Education (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Geoffrey N. Stark, on the brief).

Turp, Coates, Driggers & White, PC, attorneys for amicus curiae East Windsor Regional School District (David H. Coates, on the brief).

PER CURIAM

Appellant Board of Education of the Township of Piscataway, Middlesex County (Piscataway) appeals from the July 27, 2017 declaratory ruling of the Commissioner of Education (Commissioner), determining that pursuant to the Charter School Program Act of 1995, N.J.S.A. 18A:36A-1 to -18 (the Charter School Act or CSPA), Piscataway was obligated to provide funding for its students enrolled in charter schools located in other school districts. Piscataway

argues[1] that the regulations implementing the funding requirements of the Charter School Act, N.J.A.C. 6A:23A-15.2, and -15.3, are ultra vires to the extent that they impose financial obligations on school districts not in the district where the charter school is located ("district of residence") or in a contiguous district to the charter school ("region of residence").[2] We affirm.

## I.

The Piscataway Township Public School District is located in Middlesex County. Although there are no charter schools located in Piscataway, a number of its resident students attend charter schools located in other school districts, including attendance at intervenors Hatikvah International Academy Charter School (Hatikvah) in East Brunswick Township, Middlesex County, and College Achieve Central Charter School (College Achieve) in Union County.

---

[1] Amicus, East Windsor Regional School District (East Windsor), supports Piscataway's arguments.

[2] This issue has also been raised in Highland Park Board of Education v. Harrington (Highland Park II), No. A-3455-16, and in North Brunswick Township Board of Education v. Harrington (North Brunswick), No. A-3415-16, which together with In the Matter of the Approval of the Charter Amendment of Central Jersey College Prep. (Central Jersey), No. A-3074-16, have been calendared back-to-back, and heard together with this appeal. Because of this overlap, the reader is encouraged to review all four of our opinions in these cases, which are being released simultaneously.

A-5427-16T2

In December 2015, counsel for Piscataway wrote to then-Commissioner David Hespe, seeking a determination that the term "school district of residence," as used in N.J.S.A. 18A:36A-12(b) (the funding provision of the CSPA), was limited to the charter school's "district of residence," or at most, its "region of residence."[3] Under that interpretation, Piscataway would not be required to bear the costs for its students to attend any charter schools because none of the charter schools attended by its students include Piscataway in its approved "district of residence."

On January 20, 2016, the New Jersey Department of Education (Department or DOE) responded that the Commissioner could not grant the requested relief absent a formal petition for a declaratory ruling, and moreover, that any determination as to whether to entertain such a petition was "within the sole discretion of the Commissioner." Piscataway filed an appeal challenging

---

[3] The term "district of residence" is defined as "the school district in which a charter school facility is physically located; if a charter school is approved with a region of residence comprised of contiguous school districts, that region is the charter school's district of residence." N.J.A.C. 6A:11-1.2. The term "region of residence" is defined as "contiguous school districts in which a charter school operates and is the charter school's district of residence." N.J.A.C. 6A:11-1.2. See In re Charter Sch. Appeal of Greater Brunswick Charter Sch., 332 N.J. Super. 409, 424 (App. Div. 1999) ("the regulations allowing regional charter schools are a legitimate means of effectuating the Act's purpose of encouraging the establishment of charter schools.")

the regulations as applied, but subsequently withdrew it based on the Department's representation that it would entertain its petition for a declaratory ruling.

On June 24, 2016, Piscataway filed a verified petition seeking a declaratory ruling from the Commissioner regarding its funding obligations under N.J.S.A. 18A:36A-12(b) and the implementing regulations. The Attorney General filed an answer on behalf of the Department.

In July 2016, the matter was transmitted to the Office of Administrative Law (OAL) for disposition as a contested case. The OAL granted Hatikvah's and College Achieve's motions to intervene.

In December 2016, Piscataway filed a motion for summary decision seeking a determination from the Commissioner that under N.J.S.A. 18A:36A-12(b), "financial responsibility for charter school attendance is limited to school districts formally designated as the 'district of residence,' or within a 'region of residence,' in a charter school's approved charter." Piscataway sought relief from any obligation to fund out-of-district placements and sought restoration of State aid previously directed to the charter schools. In a certification submitted in support of the motion, Piscataway's Board Secretary and Business Administrator stated that for the 2016-2017 school year, its projected payment

to out-of-district charter schools totaled $247,030.

The Department cross-moved for summary decision, seeking a determination that "the language and history of the [CSPA], and its implementing regulations, clearly demonstrate that resident districts are responsible for paying for their students to attend charter schools regardless of the charter school's location." Hatikvah and College Achieve also filed briefs in opposition to Piscataway's motion for summary decision.

On June 14, 2017, the ALJ issued an initial decision denying Piscataway's motion and granting the Department's motion for summary decision. Bd. of Educ. of Twp. of Piscataway v. N.J. Dep't of Educ., EDU 10995-16, initial decision (June 14, 2017). In her comprehensive written decision, the ALJ reviewed the statutory text, legislative history, and implementing regulations, and determined that Piscataway was "obligated to provide funding in accordance with N.J.S.A. 18A:36A-12(b) for each of its residents who enrolled in a charter school no matter where the charter school is located."

The ALJ found that the meaning of the term "district of residence" as used in N.J.S.A. 18A:36A-12(b) was "clearly ambiguous." For example, if the regulatory definition of "district of residence," N.J.A.C. 6A:11-1.2, was "inserted into N.J.S.A. 18A:36A-12(b), that provision would read '[the school

district in which a charter school facility is physically located] shall pay directly to the charter school for each student enrolled in the charter school who resides in the district.'" "Under such a reading, as urged by Piscataway, a school district would be obligated to pay for its residents to attend [the] charter school only if the school district is included in the charter school's district of residence or region of residence."

However, the ALJ found that the implementing regulations, as challenged here, "imbue the term 'district of residence' as found in N.J.S.A. 18A:36A-12(b) with meaning beyond the literal regulatory definition" because the challenged regulations require both a "district of residence" and a "non-resident district" to make payments to charter schools. N.J.A.C. 6A:23A-15.2, -15.3. The Department argued that this interpretation made sense because the term "district of residence" in N.J.S.A. 18A:36A-12(b), referred to the student's district of residence and thus had a different meaning from the regulatory definition of "district of residence."

The ALJ found that despite the confusion caused by the regulatory definition of "district of residence," a review of the Act as a whole and the legislative history revealed that the regulations properly implemented the funding requirements of the CSPA. The legislative history of the Charter School

Act "supports the conclusion that a school district must pay for its residents to attend charter schools regardless of the location." Notably, in its fiscal estimate for S. 1796 (1995), which, combined with A. 592 (1995), became CSPA, the Office of Legislative Services (OLS) stated that:

> In regard to the funding of charter schools, the bill provides that the school district of residence would pay directly to the charter school for each student enrolled who resides in the district an amount equal to the local levy budget per pupil in the district for the specific grade level. . . . The cost for out of district pupils would be paid by the district of residence of the pupil. . . .
>
> The Office of Legislative Services (OLS) estimates that there will be little or no additional costs to the State or local school districts as a result of this bill. The charter school would receive the local levy budget per pupil (State aid plus local tax levy) for each pupil attending the charter school, plus any categorical aid or federal funds attributable to that pupil. If out of district pupils were admitted, the district of residence would pay the costs for that pupil. . . .
>
> [Legislative Fiscal Estimate to S. 1796 1 (Sept. 14, 1995) (emphasis added).]

The ALJ stated that the fiscal estimate, which was apparently not available to the Senate Budget and Appropriations Committee prior to its Statement, was "not the perfect extrinsic aid for discerning legislative intent with respect to N.J.S.A. 18A:36A-12(b)." S. Budget & Approps. Comm. Statement to A. 592 & S. 1796 2 (Dec. 11, 1995). Nonetheless, the fiscal estimate was useful in

determining legislative intent because there was no indication that the sponsor of the bill "objected to the OLS's statements regarding a district-of-residence's funding obligations for all of its residents who are enrolled in charter schools."

The ALJ also found that "as originally enacted," the third sentence of N.J.S.A. 18A:36A-12(b) (subsequently amended), provided, "[t]he per pupil amount paid to the charter school shall not exceed the [program] budget per pupil for the specific grade level <u>in the district in which the charter school is located</u>." (quoting <u>L.</u> 1995, <u>c.</u> 426). The ALJ reasoned that "[t]his suggests that the Legislature could have written '[t]he school district in which the charter school is located' instead of '[t]he school district of residence' in the first sentence of N.J.S.A. 18A:36A-12(b) if that is what the Legislature truly meant by 'district of residence.'"

The ALJ concluded that the interpretation that all school districts must fund their students' attendance at charter schools irrespective of location was consistent with the "overall purpose of the CSPA, which declares that '[a] charter school shall be open to all students on a space available basis.'" (quoting N.J.S.A. 18A:36A-7). Although preference for enrollment in a charter school is given to "students who reside in the school district in which the charter school is located," N.J.S.A. 18A:36A-8(a), if space is available, charter schools may

enroll non-resident students. N.J.S.A. 18A:36A-8(d). The ALJ reasoned that "[i]f a school district did not have to pay for all of its residents to attend charter schools, then charter schools would not truly be 'open to all students.' Instead, non-resident students presumably would only be able to attend charter schools if they could afford it themselves."

The ALJ further explained that:

> This might threaten the financial viability of a charter school that is unable to fill its rolls with students who reside in the district in which the charter school is located. While charter schools may "[s]olicit and accept any gifts or grants for school purposes," N.J.S.A. 18A:36A-6(g), there is no guarantee that a charter school that could not attract sufficient numbers of resident students could make up the shortfall with gifts and grants. And, while the CSPA prohibits a charter school from charging tuition to a resident student, N.J.S.A. 18A:36A-8(a), but does not specifically prohibit a charter school from charging tuition to a non-resident student, it is highly unlikely that a charter school could fill a sufficient number of available spaces with non-resident students whose parents could afford to pay tuition.

> By implementing N.J.S.A. 18A:36A-12(b) to require both "districts of residence" and "non-resident districts" to pay for their children to attend charter schools, the State Board of Education met its responsibility under N.J.S.A. 18A:36A-18 to effectuate the purpose of the CSPA, which is meant to establish a charter-school program as an alternative to traditional public schools for "all students on a space available basis." As the State Board of Education has explained,

10

[t]he premise of the [CSPA] is that all students in New Jersey are entitled to free education provided by the school district in which they reside in accordance with N.J.S.A. 18A:38-1. This entitlement can be accomplished whether they choose to attend a public school of the district or a charter school as an independent public school.

[29 N.J.R. 3492(a) (Aug. 4, 1997).]

Which district or region a charter school chooses for its residence is immaterial for determining a school district's funding obligation under N.J.S.A. 18A:36A-12(b); what triggers a school district's funding obligation is the mere fact that one of its residents is enrolled in a charter school, irrespective of location. Thus, the Department persuasively argues that the term "district of residence" as used in N.J.S.A. 18A:36A-12(b) is reasonably interpreted as the student's district of residence and not the charter school's district of residence.

Lastly, the ALJ found that "the fact that a school district's transportation-funding obligations are different for resident and non-resident students under N.J.S.A. 18A:36A-13 and N.J.A.C. 6A:27-3.1 to -3.7, does not alter the way in which N.J.S.A. 18A:36A-12(b) should be read."  The ALJ reasoned:

The CSPA provides that "[t]he students who reside in the school district in which the charter school is located shall be provided transportation to the charter school on the same terms and conditions as transportation is provided to students attending the schools of the district," but that "[n]on-resident students shall receive

11

transportation services pursuant to regulations established by the State board." N.J.S.A. 18A:36A-13.

Under those regulations, "[t]he expenditure for the transportation of charter . . . school students who reside outside of the school district or region of residence in which the charter . . . school is located is limited to the annual nonpublic school maximum statutorily established expenditure per student in accordance with N.J.S.A. 18A:39-1," and "[i]f the cost of transportation exceeds the maximum allowable expenditure, the student's parents or legal guardians may pay the amount in excess of the annual maximum or they shall be entitled to the maximum allowable expenditure as aid in lieu of transportation." N.J.A.C. 6A:27-3.1(e), -3.4. Thus, non-resident students of charter schools receive less favorable transportation treatment than resident students of charter schools, but this arrangement should be viewed as a reasonable tradeoff for a free education at a charter school of one's choice and not as having any bearing on a logical interpretation of a school district's tuition obligations under N.J.S.A. 18A:36A-12(b).

[(Footnote omitted).]

Thus, the ALJ held that Piscataway was "obligated to provide funding in accordance with N.J.S.A. 18A:36A-12(b) for each of its residents who is enrolled in a charter school no matter where the charter school is located." The ALJ stated:

Ultimately, the Legislature directed the State Board of Education to implement the provisions of the CSPA. Through its adoption of N.J.A.C. 6A:23A-15.2 and -15.3, the State Board of Education has implemented N.J.S.A. 18A:36A-12(b) by requiring both "districts of

residence" and "non-resident districts" to pay for their children to attend charter schools. Here, Piscataway has asked for a declaratory ruling regarding the scope of its funding obligations under N.J.S.A. 18A:36A-12(b). The State Board of Education has made clear that Piscataway must, in accordance with N.J.S.A. 18A:36A-12(b), pay a charter school for each Piscataway resident who is enrolled in the charter school no matter where the charter school is located. If Piscataway wishes to challenge the validity of any of the State Board of Education's regulations, the proper venue for such a challenge would be the Appellate Division in accordance with R. 2:2-3(2).

In her final decision, then-Commissioner Kimberley Harrington adopted the initial decision of the ALJ, and stated:

> Upon consideration and review, the Commissioner is in accord with the ALJ's determination that, pursuant to the Act and the provisions set forth in N.J.A.C. 6A:23A-15.1-15.4, the petitioner is obligated to provide funding for its students enrolled in charter schools located in other school districts.[] Furthermore, while petitioner [Piscataway] has framed its contentions as an issue with the Department's interpretation of the Act—which interpretation the Commissioner finds was proper—petitioner is, nevertheless, questioning the validity of the regulations. It is clear from the submissions that petitioner's true contention is with the department's regulations, which set forth the specific requirements from which petitioner is seeking relief. Therefore, petitioner's disagreement with the regulations, and its challenges to the requirement imposed upon it, is properly addressed before the Appellate Division in accordance with R. 2:2-3(2).

[(Footnote omitted).]

This appeal followed.

## II.

As noted at the outset, Piscataway contends that "the Department['s] . . . charter school regulations are ultra vires to the extent they impose financial obligations on school districts not included in a charter school's 'district of residence' or 'region of residence.'" We disagree.[4]

The scope of judicial review of a final decision of the Commissioner is limited. In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 385 (2013). Further, "[j]udicial review of agency regulations begins with a presumption that the regulations are both 'valid and reasonable.'"

---

[4] Initially, Intervenors Hatikvah and College Achieve argue that the appeal is time-barred because Piscataway had been making payments to charter schools located outside of its district for years, and waited until 2015 to challenge the regulations. However, we reject this argument because the Commissioner agreed to entertain the petition for declaratory ruling on the merits below, and Piscataway filed an appeal within forty-five days of that final decision. R. 2:4-1(b). Moreover, in administrative appeals, "[u]nlike quasi-judicial actions, there is . . . no time limit on . . . direct challenges to the substantive validity of an agency rule or regulation." Pressler & Verniero, Current N.J. Court Rules, cmt. 3.1 on R. 2:4-1(b) (2019). See In re Six Month Extension of N.J.A.C. 5:91-1, 372 N.J. Super. 61, 87 (App. Div. 2004) ("forty-five-day time limit on appeals from final decisions of administrative agencies does not generally apply to challenges to the validity of agency regulations, especially where the challenges raise constitutional questions or involve important questions implicating the public interest.")

N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 548 (2012) (quoting N.J. Soc'y for Prevention of Cruelty to Animals (NJSPCA) v. N.J. Dep't of Agric.,196 N.J. 366, 385 (2008)).  "[T]he party challenging a regulation has the burden of proving that the agency's action was 'arbitrary, capricious or unreasonable.'" Ibid. (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)).  A challenger can meet that burden "by demonstrating an inconsistency between the regulation and the statute it implements, a violation of policy expressed or implied by the Legislature, an extension of the statute beyond what the Legislature intended, or a conflict between the enabling act and other statutory law that cannot be harmonized."  N.J. Ass'n of Sch. Adm'rs v. Cerf, 428 N.J. Super. 588, 596 (App. Div. 2012).

Although an appellate court is not bound by an agency's determination on a question of law, Hargrove v. Sleepy's, LLC, 220 N.J. 289, 301 (2015), "[c]ourts afford an agency 'great deference' in reviewing its 'interpretation of statutes within its scope of authority and its adoption of rules implementing' the laws for which it is responsible." Schundler, 211 N.J. at 549 (quoting NJSPCA, 196 N.J. at 385).  Nevertheless, "courts must invalidate a regulation that is 'inconsistent with the statute it purports to interpret. . . .'" Ibid. (quoting NJSPCA, 196 N.J. at 385).

"[T]he goal of statutory interpretation is to ascertain and effectuate the Legislature's intent." Cashin v. Bello, 223 N.J. 328, 335 (2015). "[T]he best indicator of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492 (2005). "Accordingly, '[t]he starting point of all statutory interpretation must be the language used in the enactment.'" Spade v. Select Comfort Corp., 232 N.J. 504, 515 (2018) (quoting N.J. Div. of Child Prot. & Permanency v. Y.N., 220 N.J. 165, 178 (2014)).

Courts "construe the words of a statute 'in context with related provisions so as to give sense to the legislation as a whole.'" Spade, 232 N.J. at 515 (quoting N. Jersey Media Grp., Inc. v. Twp. of Lyndhurst, 229 N.J. 541, 570 (2017)). "If the plain language leads to a clear and unambiguous result, then our interpretative process is over." Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016). Courts "turn to extrinsic tools to discern legislative intent . . . only when the statute is ambiguous, the plain language leads to a result inconsistent with any legitimate public policy objective, or it is at odds with a general statutory scheme." Shelton v. Restaurant.com, Inc., 214 N.J. 419, 429 (2013).

Charter schools are public schools that operate under a charter granted by the Commissioner, operate independently of a local board of education, and are

managed by a board of trustees. N.J.S.A. 18A:36A-3(a). Funding for charter

schools comes from the local school district, and state and federal aid, but is not

equivalent to the per pupil funding that a traditional public school receives.

N.J.S.A. 18A:36A-12(b).

At issue here, the CSPA funding provision provides that:

> The school district of residence shall pay directly to the
> charter school for each student enrolled in the charter
> school who resides in the district an amount equal to
> 90% of the sum of the budget year equalization aid per
> pupil, the prebudget year general fund tax levy per
> pupil inflated by the CPI rate most recent to the
> calculation, and the employer payroll tax per pupil that
> is transferred to the school district pursuant to
> subsection d. of section 1 of P.L.2018, c.68. In
> addition, the school district of residence shall pay
> directly to the charter school the security categorical
> aid attributable to the student and a percentage of the
> district's special education categorical aid equal to the
> percentage of the district's special education students
> enrolled in the charter school and, if applicable, 100%
> of preschool education aid. The district of residence
> shall also pay directly to the charter school any federal
> funds attributable to the student.

[N.J.S.A. 18A:36A-12(b) (emphasis added).]

The term "school district of residence" is not defined in either the CSPA

or the implementing regulations. The term "district of residence" is, however,

defined in the regulations as "the school district in which a charter school facility

is physically located; if a charter school is approved with a region of residence

comprised of contiguous school districts, that region is the charter school's district of residence." N.J.A.C. 6A:11-1.2; N.J.A.C. 6A:23A-15.1. A "resident student" means "a student who resides in the area served by the district board of education that is the same as the district of residence of the charter school." N.J.A.C. 6A:11-1.2; N.J.A.C. 6A:23A-15.1.

However, a non-resident school district is defined as both "a school district outside the district of residence of the charter school," N.J.A.C. 6A:11-1.2, and as "a school district outside the school district of residence of the charter school." N.J.A.C. 6A:23A-15.1 (emphasis added). A "'non-resident student' means a student from a non-resident district attending a charter school." N.J.A.C. 6A:11-1.2; N.J.A.C. 6A:23A-15.1.

In 2009, in accordance with the CSPA, the State Board of Education promulgated the regulations at issue here, N.J.A.C. 6A:23A-15.2 and -15.3. 41 N.J.R. 642(a) (Jan. 20, 2009). The regulations were designed "to assure the financial accountability of local public school districts through enhanced State monitoring, oversight and authority, and to ensure that each district board of education adopts an annual budget that provides adequate resources to meet the State Constitution's mandate for a thorough and efficient system of free public schools for all children." 41 N.J.R. 642(a) (Jan. 20, 2009).

No commentator objected to the regulations.  41 N.J.R. 642(a) (Jan. 20, 2009); 49 N.J.R. 1038(a) (May 1, 2017).  Nor did any commentators object on that basis to N.J.A.C. 6A:11-1.1 to -6.4, the regulations governing the application for and operation of a charter school.  29 N.J.R. 3492(a) (Aug. 4, 1997); 32 N.J.R. 3560(a) (Oct. 2, 2000); 49 N.J.R. 1038(a) (May 1, 2017).  In fact, in response to a comment to an amendment to N.J.A.C. 6A:23A-22.4 ("Financial Requirements"), the Department explained that "[c]harter school funding follows the child and, therefore, is only remitted once the school is operational."  49 N.J.R. 2521(a), 2522 (Aug. 7, 2017).

The funding regulations, N.J.A.C. 6A:23A-15.1 to -15.4, require both a "district of residence" and a "non-resident district" to pay for its students to attend a charter school.  N.J.A.C. 6A:23A-15.2 details the per pupil payments to charter schools:

> (a) The <u>resident and non-resident school districts</u> shall use projected charter school aid as established by the Commissioner in a report to be distributed no later than February 15 of the prebudget year for budget purposes and to initiate school district payments to the charter school for the subsequent year.  The report establishes for each <u>resident and non-resident school district a per pupil amount</u> for the local and State shares and categorical aids per student.  Once the per pupil amount is established, it is not adjusted. Projected charter school aid is based on projected enrollments at the charter school.  The number of students enrolled in the

charter school is adjusted based on average daily enrollment for aid purposes throughout the school year in accordance with the prescribed adjustments listed in N.J.A.C. 6A:23A-15.3.

(b)  The per pupil amount comprises local share as defined in (b)1 below and State share as defined in (b)2 below.

1.  The local share per pupil is the part of the per pupil amount that includes the general fund tax levy of the <u>school district of residence's or nonresident district(s)' budget(s).</u>

2.  The State share per pupil is the part of the per pupil amount that includes the equalization aid portion of <u>the school district of residence's or nonresident district(s)' budget(s)</u> or amounts, if any, contained in the annual appropriations act in-lieu-of or to supplement equalization aid for the corresponding fiscal year. . . .

[(Emphasis added).]

Also at issue, N.J.A.C. 6A:23A-15.3(g) provides that both the district of residence and non-resident school districts are, under N.J.S.A. 18A:36A-12(b), obligated to pay charter schools as follows:

(g)   A district board of education shall process payment(s) and payment adjustments to a charter school during the school year as follows:

1.  The <u>district of residence and non-resident school district(s)</u> shall initiate payments to the charter school based on projected enrollment, as set forth in this section.

20

2. The school district of residence and non-resident school district(s) shall pay directly to a charter school the local share per pupil at the charter school rate, pursuant to N.J.S.A. 18A:36A-12.b, in 12 equal installments starting July 15 and thereafter on the 15th of each month.

3. Pursuant to N.J.S.A. 18A:36A-12.b, the school district of residence and non-resident school district(s) shall pay directly to the charter school the following aid in 20 equal installments on the 9th and 23rd of every month starting with September 9 and ending with June 23, or as established by the Legislature:

> i. The State share per pupil at the charter school rate; and

> ii. Categorical aid attributable to the student.

[(Emphasis added).]

Although the challenged regulations expressly impose an obligation to fund charter schools on both the resident and non-resident school districts, the regulations also seem to distinguish between a "school district of residence" and a "non-resident district"  N.J.A.C. 6A:23A-15.2, -15.3.

Nonetheless, a review of the term both in the context of the CSPA as a whole and in light of the legislative history of the Act, supports the Commissioner's interpretation.  In this regard, the fact that the Legislature, which as recently as last year amended N.J.S.A. 18A:36A-12(b), L. 2018, c. 68,

did not act in response to the agency's adoption of N.J.A.C. 6A:23A-15.1 to -15.4, eleven years earlier, should be "'granted great weight as evidence of its conformity with the legislative intent.'" Klumb v. Bd. of Educ. of Manalapan-Englishtown Reg'l High Sch. Dist., Monmouth Cty., 199 N.J. 14, 24-25 (2009) (quoting Malone v. Fender, 80 N.J. 129, 137 (1979)).

Moreover, as discussed in Highland Park II, after the Commissioner's decision in this case, the Appellate Division, in an unpublished decision, Highland Park Board of Education v. Hespe (Highland Park I), No. A-3890-14 (App. Div. Jan. 24, 2018) (slip op. at 19), certif. denied, 233 N.J. 485 (2018),[5] addressed this precise issue. In that case, this court rejected Highland Park's argument that only the charter school's "district of residence" was obligated to pay for its students to attend the school. Ibid. The court found that the plain language of N.J.S.A. 18A:36A-12(b) "expressly provides that the 'school district of residence' must pay the charter school for 'each student' enrolled in the school." Id. at 16. Thus, we held that "as used in N.J.S.A. 18A:36A-12(b), the term 'school district of residence' refers to the district where the student resides,

_____

[5] The appellant in Highland Park I appealed from the Commissioner's final decision approving Hatikvah's second application to amend its charter. Although Highland Park I is unpublished, it involved some of the same parties, and the identical issue raised here, and thus, although not precedential, it is instructive.

not the district where the charter school is located." Ibid.

This court found that the CSPA "expressly envisions that students may enroll in a charter school, even though they reside in a district other than the district where the charter school is located." Id. at 16-17. There is nothing in the CSPA "that would allow these students to attend a charter school without a financial contribution from the school districts in which they reside." Id. at 17. Thus, under N.J.S.A. 18A:36A-12(b), the obligation of a school district to fund its student's attendance at a charter school is not limited to the charter school's "district of residence." Ibid.

We also found that the implementing regulations were "consistent with this interpretation of N.J.S.A. 18A:36A-12(b)." Ibid. Specifically, the court cited to N.J.A.C. 6A:23A-15.3(g)(2), (3), one of the challenged regulations in this case, noting that "[i]ndeed, the regulations expressly provide that both a charter school's 'district of residence' and the 'non-resident school districts' must pay for their students to attend a charter school." Ibid.

Lastly, the court found that "extrinsic evidence," notably the OLS fiscal estimate as relied on by the ALJ here, "also supports this interpretation of N.J.S.A. 18A:36A-12(b)." Ibid. Thus, we concluded that "as used in N.J.S.A. 18A:36A-12(b), the term 'school district of residence' refers to the district where

23

the student resides, not the district where the charter school is located." Id. at 16.

On appeal, Piscataway argues that the decision in Highland Park I was "erroneous and should not be followed." It contends that the more plausible inference is that the Legislature intended to impose financial responsibility only on the district where the charter school is located, or at most the region of residence, because non-resident districts are not entitled to receive notice or input as to the approval or amendment process. Under that interpretation, Piscataway would be relieved of any financial responsibility for educating its students enrolled in charter schools because no charter schools are located in its district, or in a contiguous district.

However, the Legislature found that "the establishment of a charter school program is in the best interests of the students of this State and it is therefore the public policy of the State to encourage and facilitate the development of charter schools." N.J.S.A. 18A:36A-2. Under that broad policy, the Legislature mandated that "[a] charter school shall be open to all students on a space available basis. . . ." N.J.S.A. 18A:36A-7. Significantly, although preference is given to students who reside in the school district in which the charter school is located, if available space permits, a charter school may enroll non-resident

students.  N.J.S.A. 18A:36A-8(a),(d).

As this court found in Highland Park I, slip op. at 17, there is nothing in the Act that would allow non-resident students to attend a charter school without a financial contribution from the school district in which they reside.  In fact, in order to enroll in a charter school, either in or out of district, the student must first register "in the school district in which he or she resides," N.J.A.C. 6A:23A-15.3(a), and thus funding would pass through the Board of Education in that district before being allocated to the charter school.  See In re Grant of Charter Sch. Application of Englewood on the Palisades Charter Sch., 320 N.J. Super. 174, 224 (App. Div. 1999) (discussing funding provision of CSPA), aff'd as modified, 164 N.J. 316 (2000).

To that end, the interpretation of the term "school district of residence" used in N.J.S.A. 18A:36A-12(b) to refer to the district where the student resides, and not the district where the charter school is located, is entirely consistent with the Act and the policy expressed by the Legislature.  As the ALJ found, "[i]f a school district did not have to pay for all of its residents to attend charter schools, then charter schools would not truly be 'open to all students.'"  Students residing in districts without a charter school, like Piscataway, would be foreclosed from attending a charter school unless they could afford to pay to attend the public

charter school—a result inconsistent with the Legislature's intent in drafting the Charter School Act.    See Englewood, 164 N.J. 322 (charter schools were authorized as an alternate format for providing public education to New Jersey children).

In fact, as originally enacted, the Legislature differentiated in N.J.S.A. 18A:36A-12 (subsequently amended), between a school district of residence and a school district where the charter school was located, to protect a wealthy district from sending excess revenue to charter schools located in less wealthy districts, as follows:

> The school district of residence shall pay directly to the charter school for each student enrolled in the charter school who resides in the district a presumptive amount equal to 90% of the local levy budget per pupil for the specific grade level in the district.  At the discretion of the commissioner and at the time the charter is granted, the commissioner may require the school district of residence to pay directly to the charter school for each student enrolled in the charter school an amount equal to less than 90% percent, or an amount which shall not exceed 100% of the local levy budget per pupil for the specific grade level in the district of residence.  The per pupil amount paid to the charter school shall not exceed the local levy budget per pupil for the specific grade level in the district in which the charter school is located. The district of residence shall also pay directly to the charter school any categorical aid attributable to the student, provided the student is receiving appropriate categorical services, and any federal funds attributable to the student.

[L. 1995, c. 426 (emphasis added).]

Although the underlined provision regarding per pupil expenditures was subsequently amended, L. 2007, c. 260, § 56, reading the statute as a whole as originally enacted supports both the Commissioner's and the Highland I court's interpretation that the Legislature meant the term "school district of residence," to refer to the student's residence. There would have been no need for such a provision if districts were only responsible for funding students attending charter schools in their districts.

Moreover, the current funding provision, N.J.S.A. 18A:36A-12(b), was amended by the School Funding Reform Act of 2008 (SFRA), N.J.S.A. 18A:7F-43 to -63, to apply the "weighted school funding formula" to charter schools. Our Supreme Court described that formula, which is used to calculate the amount of state aid to be provided to each school district, as "the State's most recent, lengthy and painstaking effort to craft a redesigned school funding formula that satisfies the constitutional standard." Abbott v. Burke (Abbott XX), 199 N.J. 140, 147 (2009). Under N.J.S.A. 18A:36A-12(b), the school district of residence shall pay directly to the charter school certain funds, including equalization aid, security categorical aid, received by the district under the SFRA formula. N.J.A.C. 6A:23A-15.1. Those funds, which are

"attributable to the student," are paid to the school district where the student resides and not to the district where the charter school is located. N.J.S.A. 18A:7F-43 to -63.

Thus, it would make no sense to interpret "school district of residence" to mean the "district of residence." N.J.S.A. 18A:36A-12(b). Given that both resident and non-resident students can attend a charter school, the term "school district or residence" logically means the district where the student resides. A school is located in a district, it does not reside in a district.

This interpretation is also consistent with another section of the CSPA, N.J.S.A. 18A:36A-11(b), which provides that a charter school shall comply with the laws concerning the "provision of services to students with disabilities; except that the fiscal responsibility for any student currently enrolled in or determined to require a private day or residential school shall remain with the district of residence." As used in N.J.S.A. 18A:36A-11(b), "district of residence" must refer to the student's home district, because a non-resident district would not be obligated to fund a student residing outside its borders. In fact, the Legislature did not use the term "district of residence" elsewhere in the Act when referring to the district where the charter school is located. See N.J.S.A. 18A:36A-8(a); N.J.S.A. 18A:36A-13. Further, in a separate Act, the

Legislature directed the Commissioner, for school funding purposes for children in State facilities, N.J.S.A. 18A:7B-12(b), to determine the child's "district of residence" based on the district where the parent or resource family resided. N.J.S.A. 18A:7B-12.

Additionally, as this court found in Highland Park I, the interpretation is supported by the legislative history of the CSPA. In its fiscal estimate the OLS confirmed its understanding that the district in which the student resided would pay an out-of-district charter school. Legislative Fiscal Estimate to S. 1796 (L. 1995, c. 426). Although, as the ALJ pointed out, the fiscal estimate is not "the perfect extrinsic aid" because the bill was subsequently amended, and the estimate was not available at the time of the Sponsor's Statement to S. 1796 5 (L.1995, c. 426), it nonetheless demonstrates the Legislature's understanding that the student's district would fund the charter school. See In re Pub. Serv. Elec. & Gas Co.'s Rate Unbundling, 167 N.J. 377, 388 n.2 (2001) (Legislative Fiscal Estimate was a "slender reed on which to overturn the BPU's Final Order"); Bd. of Chosen Freeholders of Cty. of Morris v. State, 311 N.J. Super. 637, 645 (Law Div. 1997) (Legislative Fiscal Estimate is very useful in ascertaining legislative intent if relied on by Legislature in enacting bill), aff'd, 311 N.J. Super. 587 (App. Div. 1998), aff'd, 159 N.J. 565 (1999).

Nonetheless, Piscataway argues here, as in <u>Highland Park II</u>, that under that interpretation non-resident school districts will be deprived of due process because non-resident districts are not entitled to receive formal notice of a charter school's application to amend its charter, or input into the amendment process. N.J.A.C. 6A:11-2.1, -2.6(a)(b). Piscataway argues that "surely," the Legislature did not contemplate a system where every school district had to constantly monitor charter school activity throughout the state, and was obligated to fund those schools without consideration of the charter school's impact.

The notice provisions do not, however, relieve non-resident districts from bearing financial responsibility for their students' attendance at charter schools. Because preference for enrollment in a charter school is given to students who reside in the school district in which the charter school is located, N.J.S.A. 18A:36A-8(a), it is likely that the majority of students will reside in that district, and thus it makes sense that the district of residence should receive formal notice and an opportunity for input.

Moreover, it was undisputed that Piscataway, and the appellants in the other back-to-back appeals, were aware of the applications to amend filed by Hatikvah and Central Jersey College Prep (CJCP), and had an opportunity to

submit comments on the amendment requests. In fact, in Highland II, the Commissioner received, and considered, comments from several school districts, individuals, an educational service commission, and even several legislators. Nor is there any indication in this record that the process of tracking applications to amend a charter would be particularly onerous for a non-resident district.

Nonetheless, Piscataway contends that its interpretation finds support in the Court's decision in Englewood, 164 N.J. at 316. However, this argument also lacks merit. In Englewood, three boards of education brought an action challenging the New Jersey Board of Education's grants of charters to schools in their respective districts. Id. at 318-19. In discussing a prior version of N.J.S.A. 18A:36A-12,[6] the Court wrote that "the Act provides that the district of residence of the charter school shall forward to the school a per-pupil amount set by the Commissioner, but presumptively set by the Legislature at 90% of the local levy budget per pupil for that student's grade level in the district." Id. at 322. However, in that passing comment, the Court was merely referring to the

---

[6] N.J.S.A. 18A:36A-12 then provided that "[t]he school district of residence shall pay directly to the charter school for each student enrolled in the charter school who resides in the district a presumptive amount equal to 90% of the local levy budget per pupil for the specific grade level in the district." L. 1995, c. 426.

funding provision, and did not address the question of whether the term "school district of residence" referred to the student's or the school's location.

Finally, the amicus unpersuasively argues that Piscataway's interpretation is logical because there is no provision in the CSPA prohibiting the charge of tuition to students from other districts and thus non-resident students must pay tuition to attend an out-of-district charter school. N.J.S.A. 18A:36A-8(a) provides that "[a] charter school shall not charge tuition to students who reside in the district." Although there is no similar provision prohibiting a charter school from charging a non-resident student tuition, there are also no provisions specifically authorizing such payment, or defining the method of determining tuition rates. See N.J.A.C. 6A:23A-22.1 to -22.15 (Financial Operations of Charter Schools).

For example, with regard to traditional public schools, N.J.S.A.18A:38-3(a) provides that "[a]ny person not resident in a school district, if eligible except for residence, may be admitted to the schools of the district with the consent of the board of education upon such terms, and with or without payment of tuition, as the board may prescribe." See N.J.A.C. 6A:23A-17-1 to -17.2 (method of determining tuition rates for regular public schools); N.J.A.C. 6A:23A-18.1 to -18.23 (tuition for private schools for students with disabilities).

32

In contrast, for charter schools, the Department specifically provided for payment of state and federal aid to the charter school by both the resident and non-resident districts. N.J.A.C. 6A:23A-15.2 to -15.3. As set forth above, the Legislature did not act in response to that interpretation, and non-resident school districts have apparently been funding their students' attendance at charter schools since they were first established in 1997. Further, the Commissioner's interpretation is consistent with the legislative policy to encourage the development of charter schools, N.J.S.A. 18A:36A-2, and the OLS statement that out-of-district districts would pay for the cost of their students to attend the charter school. Legislative Fiscal Estimate to S. 1796 1 (Sept. 14, 1995).

In sum, we conclude that the Commissioner correctly determined that the Department properly implemented the funding requirements of N.J.S.A. 18A:36A-12(b) by obligating both a "district of residence" and a "non-resident district" to fund their students' attendance at charter schools. Therefore, N.J.A.C. 6A:23A-15.2 and -15.3 are not ultra vires, and Piscataway is obligated to provide funding for its students enrolled in charter schools located outside its school district.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5427-16T2