**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2241-21

IN THE MATTER OF THE
CHALLENGE OF THE
COMMUNITY ASSOCIATIONS
INSTITUTE – NEW JERSEY
CHAPTER, INC., TO
AMENDMENTS TO
N.J.A.C. 5:26.

_____

Argued January 9, 2024 – Decided February 23, 2024

Before Judges Whipple, Enright and Paganelli.

On appeal from the New Jersey Department of Community Affairs, Division of Codes and Standards.

Dennis A. Estis argued the cause for appellant Community Associations Institute – New Jersey Chapter, Inc. (Greenbaum, Rowe, Smith & Davis, LLP, attorneys; Dennis A. Estis, of counsel and on the briefs; Akshar U. Patel, on the briefs).

Craig S. Keiser, Deputy Attorney General argued the cause for respondent New Jersey Department of Community Affairs (Matthew J. Platkin, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Craig S. Keiser, on the brief).

PER CURIAM

Community Associations Institute – New Jersey Chapter (CAI-NJ) appeals from a February 9, 2022 notice of action of the Department of Community Affairs (Department or DCA) denying its petition to amend or repeal several regulations. The Department promulgated these regulations in response to the enactment of a 2017 amendment to the Planned Real Estate Development Full Disclosure Act (PREDFDA) N.J.S.A. 45:22A-21 to -48. The amendment, L. 2017, c. 106, and the corresponding regulations reform elections in community associations. We affirm, in part, and reverse, in part as explained within.

By way of background, in 1977, the New Jersey Legislature enacted PREDFDA, "in the interest of the public health, safety, and welfare, and in the effort to provide decent, safe[,] and affordable housing, and to foster public understanding and trust . . . ." N.J.S.A. 45:22A-22. The Legislature directed the Department to "adopt, amend, or repeal such rules and regulations as are reasonably necessary for the enforcement of the provisions of this act . . . ." N.J.S.A. 45:22A-35(a).

The Legislature amended PREDFDA in 2017. L. 2017, c. 106, §§ 1-9. These amendments were necessary to:

> (1) Establish that all unit owners are members of the association and provide basic election participation

rights for certain residents of common interest communities, including the right of resident owners in good standing to nominate any unit owner in good standing as a candidate for any position on the executive board, run, appear on the ballot, and be elected to any executive board position, in every executive board election, and for those rights to apply regardless of the date of a community's establishment; and

(2) Establish that, except under the very limited exceptions provided, a person may not serve on an executive board unless elected through a process consistent with the provisions of PREDFDA.

[N.J.S.A. 45:22A-45.1(g).]

In 2019, in response to Chapter 106's passage, the Department proposed several new regulations as well as amendments to existing regulations. After a comment period, during which the Department considered questions and concerns raised by the public, the regulations were adopted on January 6, 2020. 52 N.J.R. 1057(a), 1057 (May 18, 2020). CAI-NJ appealed the adoption of the new regulations that July. We dismissed the appeal on September 24, 2020, for failure to exhaust administrative remedies pursuant to N.J.A.C. 5:2-2.1 to -2.3. In the Matter of the Challenge of the Cmty. Ass'ns Inst. – N.J. Chapter, Inc., to Amends. to N.J.A.C. 5:26, No. A-004071-19 (App. Div. Sept. 24, 2020). The Supreme Court denied CAI-NJ's petition for certification.

On September 30, 2021, CAI-NJ submitted a Petition for Rulemaking to the Department for the amendment or repeal of eighteen portions of N.J.A.C. 5:26. The Department issued a response on February 9, 2022, agreeing to amend some portions of the new regulations and denying the remainder of CAI-NJ's requests. This appeal followed.

The scope of our review of administrative rules, regulations, or policy, as with agency decisions, is limited and deferential. In re Adoption of N.J.A.C. 5:96 & 5:97, 215 N.J. 578, 629 (2013) (Hoens, J., dissenting). It is "generally limited to a determination whether that rule is arbitrary, capricious, unreasonable, or beyond the agency's delegated powers." In re Amend. of N.J.A.C. 8:31B-3.31 & N.J.A.C. 8:31B-3.51, 119 N.J. 531, 543-44 (1990).

Agency regulations are presumed to be both "valid and reasonable." N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 548 (2012) (quoting N.J. Soc'y for Prevention of Cruelty to Animals v. N.J. Dep't of Agric., 196 N.J. 366, 385 (2008)). When determining whether an agency has acted within its authority, we will consider whether the agency is authorized by the enabling statute to act in the given field. See Perreira v. Rediger, 169 N.J. 399, 416 (2001) (citing Knight v. Hoboken Rent Leveling & Stabilization Bd., 332 N.J. Super. 547, 552 (App. Div. 2000)). "[T]he grant of authority to an administrative agency is to

be liberally construed in order to enable the agency to accomplish its statutory responsibilities . . . ."  N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562 (1978).

We will also consider whether the application of a regulation is consistent with the statutory mandate.  See, e.g., Smith v. Dir., Div. of Tax'n, 108 N.J. 19, 34 (1987).  We may construe regulations in such a way as to accord with the statute.  See, e.g., Perreira, 169 N.J. at 416.  Lastly, we consider whether the regulation is consistent with general public policy.  See, e.g., L.T. v. N.J. Dep't of Hum. Servs., 134 N.J. 304, 320-21 (1993).

Utilizing this standard of review, we will address each challenge; first, however, we address the threshold question of whether CAI-NJ lacks standing to challenge the regulations.  The Department contends CAI-NJ fails the federal test for associational standing found in Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977).  We reject the Department's assertion.

The federal test for standing differs from that used in New Jersey. Compared to federal courts, "[o]ur courts have traditionally taken a generous view of standing in most contexts."  In re N.J. State Contract A71188, 422 N.J. Super. 275, 289 (App. Div. 2011) (citing Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y., 58 N.J. 98, 107-12 (1971); N.J. Builders Ass'n v. Mayor

& Twp. Comm. of Bernards Twp., 219 N.J. Super. 539 (App. Div. 1986), aff'd, 108 N.J. 223 (1987)).

Further, "a liberal approach to standing to seek review of administrative actions applies in this state, an approach that is less rigorous than the federal standing requirements." In re Camden Cnty., 170 N.J. 439, 448 (2002) (citing Crescent Park, 58 N.J. at 107-08).

The members of CAI-NJ are individuals "residing or owning a unit in a community association," including those who have a volunteer role in their community association; professional community managers; "business partners," which "consist of professionals and other providers of products, services, support, and counsel to association-governed communities, including developers of such communities"; and management companies. By[]laws of the Community Associations Institute, New Jersey Chapter, Inc. § 3 (July 28, 2021), https://cainj.org/wp-content/uploads/2023/04/Current-NJ-chapter-bylaws-as-approved-7.28.21.pdf. The regulations at issue here primarily address the protocols for running community association board meetings and elections. Those processes impact the members' properties and businesses, thus implicating members' economic, as well as non-economic, interests. Given New

A-2241-21

Jersey's liberal approach to standing, CAI-NJ has standing to challenge these regulations. We address each one individually.

The Regulations

A. N.J.A.C. 5:26-8.9

<u>i. N.J.A.C. 5:26-8.9(h)(2)</u>

N.J.A.C. 5:26-8.9(h) provides, in relevant part:

> (h) The association[1] shall verify the eligibility of the voters and count the ballots in a non-fraudulent and verifiable way.
>
>      . . . .
>
> 2. All ballot tallying shall occur publicly, and the ballots shall be open to inspection by any member of the association for a period of [ninety] days from the date of the election.

CAI-NJ argues subsection (h)(2) should be repealed because 1) it exceeds the grant of authority in PREDFDA, and 2) public tallying of ballots would result in a violation of members' privacy and places undue burdens on the association.

At the agency level, the Department found the regulation requiring public tallying was required to ensure "fair and open" elections, and thus the

---

[1] For purposes of this opinion, "association" refers to a community association governed by PREDFDA and the regulations at issue here.

7

Department had authority to enact it.  See N.J.S.A. 45:22A-45.1(d).  CAI-NJ contends neither PREDFDA nor Chapter 106 mentions anything about public tallying.

An agency's authority to enact regulations "consists of the powers expressly granted[,] which in turn are attended by those incidental powers [that] are reasonably necessary or appropriate to effectuate the specific delegation." Long, 75 N.J. at 562 (quoting In re Regul. F-22 of Off. of Milk Indus., 32 N.J. 258, 261 (1960)).  The grant of authority must be "liberally construed" and "courts should readily imply such incidental powers as are necessary to effectuate fully the legislative intent." Ibid.  Further, the analysis "is not limited to a plain reading of one provision in a large statutory scheme." In re Adoption of N.J.A.C. 17:1-6.4, 454 N.J. Super. 386, 396 (App. Div. 2018).  The entire enabling legislation may be considered. Ibid. (quoting In re N.J.A.C. 7:1B-1.1, 431 N.J. Super. 100, 119 (App. Div. 2013)).  However, regulations "cannot alter the terms of a statute or frustrate the legislative policy." Med. Soc'y of N.J. v. N.J. Dep't of L. & Pub. Safety, 120 N.J. 18, 25 (1990).

N.J.S.A. 45:22A-45.1(d) says:

> Because of the significant influence community associations have over the lives of their residents and because community associations are creatures of State law, it is unfair and runs contrary to American

democratic values for these communities to be governed by trustees who are not elected in a <u>fair and open</u> manner[.]

[N.J.S.A. 45:22A-45.1(d) (emphasis added).]

The legislation as a whole reflects an intent to reform elections and provide unit owners greater access to ballots. The amendment's purpose itself refers to providing members basic election participation rights. N.J.S.A. 45:22A-45.1(g)(1). Subsection (f) of this statute says: "Unit owners living in community associations should have the right to nominate candidates, run for, <u>freely elect</u>, and be elected to the executive boards that govern the communities[.]" N.J.S.A. 45:22A-45.1(f) (emphasis added). The language of the statute suggests an intent to make elections fair and transparent.

Agencies have "specialized expertise" to "enact technical regulations and evaluate issues that rulemaking invites." <u>Schundler</u>, 211 N.J. at 549 (citing <u>N.J. League of Muns. v. Dep't of Cmty. Affs.</u>, 158 N.J. 211, 222 (1999)). The Department has the authority to make regulations it determines promote fair and open elections in the context of PREDFDA and Chapter 106. Moreover, CAI-NJ concedes, "[p]ublic tallying of ballots, [is] discernible as a potential feature of 'fair and open' elections."

Of course, even when a regulation is within an agency's authority, the regulation may still be invalid if it is arbitrary, capricious, or unreasonable. See Bergen Pines Cnty. Hosp. v. Dep't of Hum. Serv., 96 N.J. 456, 477 (1984). CAI-NJ argues the provision is invalid because it violates members' privacy. However, violations of privacy are avoidable. Associations may use a double-envelope system to preserve anonymity, and—as tallying only involves counting the votes—the open verbal discussion to reconcile members' standing, authenticate signatures, and accurately allocate votes that causes CAI-NJ concern will not necessarily occur publicly.

CAI-NJ also asserts subsection (h)(2) is incongruent with the Nonprofit Corporation Act (NCA), N.J.S.A. 15A:1-1 to 16-2. NCA governs nonprofit corporations, including associations.[2]

NCA outlines the duties of election inspectors in charge of counting ballots:

---

[2] Not all associations governed by the regulations are nonprofit, however. See N.J.S.A. 45:22A-43(a) ("The association . . . may be formed as a for-profit or nonprofit corporation, unincorporated association, or any other form permitted by law."). Regarding the counting of ballots, associations with fifty or more units, "[w]hether or not formed as a nonprofit corporation," must follow NCA. N.J.S.A. 45:22A-45.2(e). Therefore, for-profit associations with less than fifty units appear to be the only associations not bound by NCA with regard to the counting of ballots.

A-2241-21

The inspectors shall determine the number of memberships outstanding and the voting power of each, the members represented at the meeting, the existence of a quorum, the validity and effect of proxies[;] and shall receive votes or consents[;] hear and determine all challenges and questions arising in connection with the right to vote[;] count and tabulate all votes or consents[;] determine the result[;] and do all acts as are proper to conduct the election or vote with fairness to all members. If there are three or more inspectors, the act of a majority shall govern. On request of the person presiding at the meeting or any member entitled to vote at the meeting, the inspectors shall make a report in writing of any challenge, question[,] or matter determined by them. Any report made by them shall be prima facie evidence of the facts therein stated, and the report shall be filed with the minutes of the meeting.

[N.J.S.A. 15A:5-22.]

CAI-NJ contends these tasks cannot be completed in public and further notes NCA sufficiently ensures fair and open elections. CAI-NJ has not demonstrated, however, the counting cannot to be completed publicly with a system protecting anonymity—for instance, using a double-envelope system, as the Department has recommended. The public tallying requirement is not inconsistent with the NCA or PREDFDA.

As for the provision for a ninety-day period after election during which any member can inspect the ballots, we discern no conflict with PREDFDA. Nothing in the enabling statute conflicts with this provision. And, though CAI-

11

NJ argues the requirement is unnecessary, there is nothing suggesting the requirement is unreasonable such that the regulation should be invalidated.

### ii. N.J.A.C. 5:26-8.9(h)(3)

Subsection (h)(3) says: "All ballots shall be cast in an anonymous manner." N.J.A.C. 5:26-8.9(h)(3). The Department suggests using a double-envelope system to help maintain anonymity. 52 N.J.R. at 1066.

CAI-NJ argues this regulation imposes too heavy a burden on associations and is impracticable and the double-envelope system cannot account for weighted voting or proxy votes and is no less vulnerable to fraud. CAI-NJ argues it should be invalidated due to unreasonableness. We disagree.

Regulations are presumed valid and reasonable. Schundler, 211 N.J. at 548 (quoting N.J. Soc'y for Prevention of Cruelty to Animals, 196 N.J. at 385). CAI-NJ has not established that the anonymity requirement is inconsistent with PREDFDA, or that it is otherwise unreasonable. The voting system adopted can account for weighted votes by placing varying weight on ballots without any identifying information or by issuing multiple ballots. Any issue with proxy voting can be resolved by placing the ballot and proxy forms on separate pages.

### iii. N.J.A.C. 5:26-8.9(l)(1)(v)

This provision applies to associations with fifty or more units and states:

A minimum of [thirty] days prior to the election, the association shall notify residents who are not in good standing. Such notice shall state the reason why the resident is not in good standing. The notice shall state that residents have the right to contest the board's determination by requesting Alternative Dispute Resolution.[3] Residents shall be allowed to rectify their standing up until five business days prior to the election date . . . .

[N.J.A.C. 5:26-8.9(l)(1)(v).]

CAI-NJ contends this subsection is invalid because the Department lacks the authority to enact it and because it conflicts with NCA.

NCA allows nonprofits to fix "a date as the record date for determining . . . the members entitled to . . . vote at any meeting . . . ." N.J.S.A. 15A:5-7(a). It further provides the record date is not to be more than sixty days "prior to the members' meeting or other corporate action or event to which it relates," nor may the record date "for a members' meeting . . . be less than [ten] days before the date of the meeting." Ibid. If no record date is fixed, the default is "the day next preceding the day on which notice is given, or, if no notice is given, the

---

3 CAI-NJ challenged the alternative dispute resolution (ADR) part of this subsection in its petition. DCA agreed to amend the regulation to "clarify that residents who are not in good standing and who have already been offered ADR or who have a judg[]ment entered against them related to their standing shall not be offered ADR prior to the election."

13

day next preceding the day on which the meeting is held[.]"   N.J.S.A. 15A:5-7(b)(1).[4]

This does conflict with the regulation in so far as it limits nonprofit associations' ability to fix record dates.[5] While the regulations and the NCA are not completely in line with each other, the regulations do not conflict at all with the enabling statute, PREDFDA.

One of the express and implied purposes of Chapter 106 was to increase voter participation.  It noted that the 1993 supplement to PREDFDA "was not

---

[4] It should be noted this provision, like many in NCA, mirrors the Business Corporation Act, N.J.S.A. 14A:1-1 to 18-11.  N.J.S.A. 14A:5-7.

[5] No party references the ten-day minimum.  Presumably, this would not apply to elections, but only "members' meetings," as the statute lists this requirement in a separate sentence and with wording different from the sixty-day maximum (which applies to "members' meeting[s and] other corporate action[s] or event[s]").  N.J.S.A. 15A:5-7(a).  CAI-NJ seems to confirm this interpretation, noting that "[m]any bylaws do fix a date which could span from three . . . business days prior to an election to thirty . . . calendar days."

If the ten-day requirement did apply to elections, there would be an arguably more serious conflict between the regulations and the NCA.  In that case, if a nonprofit association were to fix its own record date through its bylaws or the board, it would have to set it at least ten days before the election.  The regulation's requirement that members be able to rectify their standing until five days before the election renders meaningless any record date set before that.  Thus, nonprofit community associations would not be able to fix their own record dates at all.  They would have to use the default dates found in N.J.S.A. 15A:5-7(b).

specific . . . in recognizing . . . all unit owners were entitled to participate fully in elections of members of the executive board." N.J.S.A. 45:22A-45.1(e). It had several provisions meant to make voting more accessible.

We conclude the regulation is not unreasonable simply because it is inconsistent with the NCA, an act that many community associations are governed by. Associations may comply with both the regulation and NCA.

B. N.J.A.C. 5:26-8.10(a)(2)

Subsection 8.10(a)(2) provides:

> (a) The association bylaws may provide for representation on the executive board for owners with different types of units. Such owners shall be afforded the right to nominate members of the executive board to ensure representation of their unit types on the board.
>
> . . . .
>
> 2. When affordable units . . . represent a minority of units in the development, the bylaws shall reserve a seat or seats on the executive board for election by owners of affordable units.
>
> [N.J.A.C. 5:26-8.10(a)(2).]

CAI-NJ argues this regulation conflicts with Chapter 106 and directs us to this subsection:

> It shall be permissible for the bylaws of the association to provide:

. . . .

> (c) for a limitation on the number of executive board members nominated and elected by only certain association members, . . . if that limit is based upon a classification intended to further the election of one or more executive board members by the association members . . . [owning] affordable housing units that represent a minority of the units in a planned real estate development[.]
>
> [N.J.S.A. 45:22A-45.2(f)(1)(c).]

The statute provides associations with the option of limiting certain board seats to reserve seats for representatives elected by those in affordable housing units. In its notice of action, the Department stated that "[t]he regulations further those provisions in the interest of democratic elections and fair representation on the executive board and are necessary to ensure owners of affordable units have a voice on the executive board." The Department assures the regulation "does not require the appointment of someone from an affordable unit. Rather, it ensures that, when there is a minority of affordable housing units, those units have a voice on the board." We disagree.

"[A]n agency may not adopt regulations that, rather than fill in gaps in the statute, alter the terms of a legislative enactment or frustrate the policy embodied in the statute." A.Z. ex rel. B.Z. v. Higher Educ. Student Assistance Auth., 427 N.J. Super. 389, 401 (App. Div. 2012) (citing T.H. v. Div. of Developmental

16

<u>Disabilities</u>, 189 N.J. 478, 491 (2007)).  N.J.A.C. 5:26-8.10(a)(2) does not frustrate the policy embodied in PREDFDA or Chapter 106.  The reservation of at least one seat to be elected by members of affordable housing units does not clash with the spirit of Chapter 106, enacted to enhance resident voting participation rights.  <u>L.</u> 2017, <u>c.</u> 106.  The regulation does alter the terms of the statute, however, by turning an option into a requirement.  Thus, we reverse as to Subsection 8.10(a)(2).

 C.  N.J.A.C. 5:26-8.12

  i.  <u>N.J.A.C. 5:26-8.12(e)(2)</u>

This subsection provides:

> (e) The executive board may exclude attendance of all association members and voting eligible tenants at meetings, or portions of a meeting.
>
> 1.  The exclusion under (e) above shall only be for discussion of any matters listed in this paragraph:
>
>> i.  Those in which disclosure would constitute an unwarranted invasion of individual privacy;
>>
>> ii.  Pending or anticipated litigation or contract negotiations;
>>
>> iii.  Those involving employment, promotion, discipline, or dismissal of a specific employee or officer of the association; and/or

iv.  Those falling within the attorney-client privilege, to the extent that confidentiality is required in order for the attorney to exercise his or her ethical duties as a lawyer.

2.  A vote taken at a closed meeting shall not be binding.  If the matter requires a binding vote, [the vote] shall be taken at a subsequent open meeting in a manner that does not disclose any confidences.

[N.J.A.C. 5:26-8.12(e)(1)-(2).]

The relevant portion of PREDFDA (also amended by Chapter 106) says:

The bylaws of the association . . . shall include[] . . . the following:

a.  A requirement that all meetings of the executive board, except conference or working sessions at which no binding votes are to be taken, shall be open to attendance by all association members . . . ; except that the executive board may exclude or restrict attendance at those meetings, or portions of meetings, dealing with (1) any matter the disclosure of which would constitute an unwarranted invasion of individual privacy; (2) any pending or anticipated litigation or contract negotiations; (3) any matters falling within the attorney-client privilege, to the extent that confidentiality is required in order for the attorney to exercise his ethical duties as a lawyer, or (4) any matter involving the employment, promotion, discipline[,] or dismissal of a specific officer or employee of the association.

[N.J.S.A. 45:22A-46(a).]

CAI-NJ argues PREDFDA allows association boards to hold closed sessions based on the four exceptions, and votes taken at those sessions may be binding as long as they fall into one of the four exceptions. It calls our attention to the language of the Open Public Meetings Act (OPMA), N.J.S.A. 10:4-6 to -21, which, unlike PREDFDA, makes it clear that meetings are to be open to the public "at all times," except the public body may exclude the public from a portion of a meeting at which the body "discusses" enumerated topics. N.J.S.A. 10:4-12.

In its notice of action, the Department reasoned this regulation was based on the former N.J.A.C. 5:20-1.1, a regulation promulgated pursuant to the Condominium Act, N.J.S.A. 46:8B-1 to -38. The Department said N.J.A.C. 5:20-1.1 "has been consistently interpreted by the Department as requiring binding votes to be taken only during open portions of a meeting . . . ." The Department had rejected the argument that, because PREDFDA used the words "dealing with" instead of "discusses," used by the OPMA, voting was permitted during meetings falling under these exceptions. 52 N.J.R. at 1073.

The succinct issue is whether the Legislature intended to permit or prohibit voting at meetings or portions of meetings closed due to the four exceptions listed in N.J.S.A. 45:22A-46(a). An agency's interpretation of a

19

statute within the scope of its authority is afforded "great deference." Schundler, 211 N.J. at 549 (quoting N.J. Soc'y for Prevention of Cruelty to Animals, 196 N.J. at 385). The Department contends PREDFDA does not allow voting at closed meetings, even those falling under one of the four exceptions. It says the statute "does not explicitly state whether a binding vote can be taken in executive session on matters involving one of the four excluded topics," and so deference should be given to its interpretation.

"Ordinarily, we derive a statute's meaning from its language." T.H., 189 N.J. at 491 (citing State v. Sutton, 132 N.J. 471 (1993)). PREDFDA says "all meetings of the executive board, except conference or working sessions at which no binding votes are to be taken, shall be open to attendance by all association members" except the board may "exclude or restrict attendance at those meetings, or portions of meetings, dealing with" one of the four enumerated topics. N.J.S.A. 45:22A-46(a). The statute's plain language allows for an interpretation that meetings that fall under one of the exceptions, as a whole—including voting—may be closed. The statute specifies only "conference [and] working sessions" as meetings at which the board cannot take a binding vote. When it says the board may "exclude or restrict attendance at those meetings,"

(emphasis added), it is referring to "all meetings of the executive board, except conference or working sessions."

Additionally, the exception applies to meetings or portions thereof "dealing with" certain topics. It does not refer to portions of meetings during which the board simply "discusses" these topics, contrasting with the language in the OPMA. Rather, PREDFDA language suggests the meeting or the portion of the meeting dealing with the excepted topic may be closed.

The statute does not forbid binding votes from being taken at all closed meetings, as the regulation does. Thus, we deem the regulation as altering the terms of the statute. See T.H., 189 N.J. at 491-95 (invalidating a regulation that imposed an age limit where the statute did not). We reverse as to N.J.A.C. 5:26-8.12(e)(2).

### ii. N.J.A.C. 5:26-8.12(f)(6)

As proposed, subsection 8.12(f) stated, in relevant part:

> (f) Minutes for the open sessions of meetings shall be taken for each meeting.
>
> . . . .
>
> 6. If a meeting is recorded electronically, a written record shall be taken of the matters addressed and the matters voted on. Association members shall have access to the electronic recording, as well as the written

record, including the right to make a copy of electronic or written records.

[51 N.J.R. 795(a), 802 (June 3, 2019).]

In response to CAI-NJ's petition, the Department agreed to amend the regulation to require the recording be made available for only thirty days after the approval of the minutes. Chapter 106 simply requires copies of the minutes of open meetings be made available to all association members before the next open meeting. N.J.S.A. 45:22A-46(a).

CAI-NJ argues mandating associations to retain electronic recordings for even thirty days is unduly burdensome and the regulation is arbitrary and capricious because a written record of each meeting's minutes is already available to all members.

The Department did not, in its notice of action, explain the reason for requiring associations to retain an electronic and written record of the meetings. Presumably, the regulation serves to increase access to and transparency in the meetings (although it is unclear how the "written record" referred to in the regulation differs from the minutes of the meetings; both contain the matters addressed and matters voted on). The Department contends the regulation "furthers association members' interest in understanding what is occurring in

22

their communities" and gives effect to the Legislature's intent to inform members of the events of the meetings.

CAI-NJ bears the burden of showing the regulation is arbitrary, capricious, or unreasonable. In re Adoption of Unif. Hous. Affordability Controls, 390 N.J. Super. 89, 103 (App. Div. 2007) (citing In re Adoption of N.J.A.C. 10:52-5.14(d)(2) & (3), 276 N.J. Super. 568, 575 (App. Div. 1994)). It does not explain why it is burdensome for an association to retain an electronic recording for thirty days. Thus, we are constrained to affirm under our standard of review.

D. N.J.A.C. 5:26-8.13

i. N.J.A.C. 5:26-8.13(d)

N.J.A.C. 5:26-8.13 concerns the amendment of bylaws. Subsection (d) provides: "The majority [vote] shall be determined based on association membership in good standing at the time of the vote." N.J.A.C. 5:26-8.13(d). CAI-NJ challenges the timing of the determination. It contends compliance with this provision makes voting "almost impossible" because an association would have to "conduct an ongoing audit" to determine good standing up until votes are cast. Additionally, it says associations would incur "unnecessary expense

23                                                                          A-2241-21

involving printing and delivery of the notices of the meeting, proposed amendments, ballots, proxies[,] and meeting/voting outcome."

As a matter of course, the Department has authority to promulgate this regulation. Chapter 106 provides "the number of total authorized votes . . . shall be based on the whole number of units owned by someone entitled to association membership after subtracting those association members who are ineligible to vote because they are not in good standing." N.J.S.A. 45:22A-46(d)(4). The statute does not specify when good standing should be determined, but this is necessary to determine what constitutes a majority. Thus, N.J.A.C. 5:26-8.13(d) fills a gap left by the statute. See A.Z., 427 N.J. Super. at 401.

In the notice of action, the Department explained the language in N.J.A.C. 5:26-8.13(d) "allows the same time periods for members to remedy any standing issues in the same manner as elections." A record date could still be established any time before the vote, and the regulation "avoids any confusion or ability to manipulate the majority and ensures consistency in the association's obligations regardless of the type of vote." The reason for this regulation, the Department contends, is also to produce a "more equitable outcome since those members who have cured their standing would remain members and/or residents of the

association after the amendments have taken place." It asserts this furthers the purpose of Chapter 106.

We discern nothing to suggest the Department acted in an arbitrary, capricious, or unreasonable manner in creating this regulation. CAI-NJ did not show this regulation would make voting "almost impossible." As the Department notes, an ongoing audit would not be necessary. One audit five days before the vote (the day by which members may rectify their standing, N.J.A.C. 5:26-8.9(l)(1)(v)) is all the regulation requires. See 52 N.J.R. at 1075, response to cmt. 135 ("[The] number of voters needed to reach quorum would be a 'floating' figure that will change based on how many members are in good standing. The figure will be final five days before the vote, and anyone qualified to vote by that date will be able to do so.").

Also, it is unclear what additional expense an association would incur related to printing and delivery of notices, proposed amendments, ballots, etc. Presumably, the association would distribute these, whether this regulation existed or not. Further, these items may be transmitted electronically, saving paper, ink, and delivery expenses. See N.J.S.A. 45:22A-46(d)(2).

Because the Department "exercised its judgment, based upon its experience and expertise" in the field, "[i]t is not [the panel's] function to

25

second-guess that choice." Unif. Hous. Affordability Controls, 390 N.J. Super.

at 103. Therefore, we conclude this regulation is valid.

ii. N.J.A.C. 5:26-8.13(f)(4)

This subsection provides:

(f) Notice of the meeting to amend the bylaws, as set forth in this subsection, shall be provided to all association members and voting eligible tenants at least [fourteen] days prior to the date of the meeting.

. . . .

4. If the bylaws permit, the notice of the meeting shall include an absentee ballot with instructions for returning the ballot. If the bylaws provide for a proxy ballot, an absentee ballot shall also be included. The instructions shall allow return of the proxy or absentee ballot by facsimile or electronic means provided that such return protects the anonymity of the voter. The association shall not require receipt of the ballot more than one business day prior to the meeting.

[N.J.A.C. 5:26-8.13(f)(4).]

CAI-NJ argues this regulation conflicts with the statute. The statute says

"the notice of the meeting [to amend bylaws] shall include a proxy ballot or

absentee ballot" if the bylaws permit it. N.J.S.A. 45:22A-46(d)(2)(d) (emphasis

added). In contrast, the statute governing elections of board members specifies

that, unless prohibited by the bylaws, "[a]n association may not use proxies for

an . . . election without also making absentee ballots available." N.J.S.A.

26

45:22A-45.2(a). Further, this statute states the notice for an election "shall include a proxy ballot <u>and</u> an absentee ballot . . . ." N.J.S.A. 45:22A-45.2(c)(5) (emphasis added).

"[W]here the Legislature specifically includes a requirement in one subsection of a statute but not in another, the term should not be supplied where it has been omitted." <u>T.H.</u>, 189 N.J. at 492 (citing <u>Higgins v. Pascack Valley Hosp.</u>, 158 N.J. 404, 419 (1999)). Here, the Legislature has chosen to require one thing for elections of executive board members and another thing for votes to amend an association's bylaws. This indicates an intent to leave the choice of whether to include proxy ballots or absentee ballots in the notice of the meeting to amend the bylaws to the discretion of the association. By requiring absentee ballots be included if the bylaws provide for a proxy ballot, the Department has altered the terms of the statute. <u>See</u> <u>A.Z.</u>, 427 N.J. Super. at 401. Thus, we conclude this portion of N.J.S.A. 5:26-8.13(f)(4) is invalid.

As for the portion of the regulation requiring anonymity, CAI-NJ reiterates its argument challenging N.J.A.C. 5:26-8.9(h)(3). This time, however, it notes the difficulty of faxing or emailing ballots while maintaining anonymity. The Department has not addressed—in its response to comments, notice of action, or brief on appeal—how associations are to maintain anonymity using

electronic means. However, the regulation does not require electronic submission of these ballots, and so a double-envelope system like the one the Department recommended in its argument defending N.J.A.C. 5:26-8.9(h)(3) would suffice. Further, it is possible to maintain anonymity electronically, perhaps by using something as simple as electronic forms and ID numbers that can be used separately from identifying information to determine whether a member is in good standing. Thus, we conclude this portion of the regulation is valid.

E. N.J.A.C. 5:26-8.14(e)

Subsection 8.14(e) reads:

> (e) The Department may levy and collect fines and may issue penalties as set forth in N.J.A.C. 5:26-11.
>
> 1. For associations that are controlled by unit owners, the Department may issue cease and desist orders, may issue a monetary penalty, may transmit the case to the Office of Administrative Law, or may file an action in the Superior Court.
>
> 2. In addition to the penalties listed above, for associations that are controlled by the developer, the Department may issue a revocation of registration.
>
> [N.J.A.C. 5:26-8.14(e).]

N.J.S.A. 45:22A-35(a) provides: "The [Department] shall adopt, amend, or repeal such rules and regulations as are reasonably necessary for the

enforcement of the provisions of this act . . . ." The act refers to PREDFDA, of which Chapter 106 is a part. If this statute enables the Department to promulgate regulations pertaining to Chapter 106, then it must also allow for the promulgation of regulations to enforce Chapter 106.

Other provisions of PREDFDA grant the Department authority to: petition the Superior Court for injunctive relief, N.J.S.A. 45:22A-35(b); fine "[a]ny person who violates any provision of this act or of a rule adopted under it[,]" N.J.S.A. 45:22A-38; issue cease and desist orders to any person the Department finds "[v]iolated any provision of this act" or "any lawful . . . rule of the [Department,]" N.J.S.A. 45:22A-33; and revoke the registration of a developer found to have "[w]illfully violated any provision of this act or of a rule adopted thereunder[,]" N.J.S.A. 45:22A-34. In each of these statutes, the act referred to is PREDFDA—of which Chapter 106, by way of supplementing and amending it, is a part.

CAI-NJ argues these enforcement powers only apply to L. 1977, c. 419, and not to Chapter 106. It points to other amendments that have their own enforcement provisions. For instance, N.J.S.A. 45:22A-53 provides the penalties for failing to comply with the amendment addressing proprietary campground facilities, N.J.S.A. 45:22A-49 to -56. L. 1993, c. 258. Similarly,

the 2007 statute governing solar panel collectors provides that the Department may levy and collect fines pursuant to N.J.S.A. 45:22A-38 to enforce it. N.J.S.A. 45:22A-48.2(d); L. 2007, c. 153. We reject this argument.

It makes little sense to read these amendments and Chapter 106 as indicating the Legislature did not wish to enforce the provisions in Chapter 106. Instead, the fact the Legislature named certain penalties in the campground and solar laws may indicate an intent for the agency to enforce the laws using these specific penalties. That is to say, these may be read as limitations on the penalties the Department may issue, rather than grants of authority without which the Department would be powerless to carry out enforcement. The fact the Legislature specified a different minimum fine for violations of the campground laws supports this interpretation.

Thus, we conclude this regulation is valid.

F. Whether N.J.A.C. 5:26-8.12(b) and (h) undermine the intent of the enabling statute.

N.J.A.C. 5:26-8.12(b) provides:

> (b) The association shall hold an annual meeting. Within seven days following the annual association meeting, the association shall post, and maintain posted throughout the year, an open meeting schedule of the executive board.

30

1.  Such open meeting schedule shall be posted at the place or places at which notices are posted pursuant to (c) below and filed with the board member designated for administering association business.

2.  The open meeting schedule shall contain the time, date, and locations of such meetings.

3.  Any changes to the posted open meeting schedule shall be made at least seven days prior to the scheduled date and posted and maintained in the same manner as the original schedule. [6]

[N.J.A.C. 5:26-8.12(b).]

Subsection (h) says:

(h)   When the board has determined to cancel a scheduled open meeting, it shall post notice of the cancellation at the meeting site by the time the meeting is scheduled to begin.  The Board shall promptly post the notice of cancellation at the location on the property where notices are posted and, if applicable, its website.

1.  The notice shall state when the meeting will be held and the reason for the cancellation.

2.  If the start time is delayed, notice of the new time shall be posted at the meeting site to provide notice of the delay to those attending.

[N.J.A.C. 5:26-8.12(h).]

---

6  N.J.A.C. 5:26-8.12(b)(3) has since been amended to read "Notwithstanding a meeting cancellation pursuant to (h) below, any changes to the posted open meeting schedule shall be made at least seven days prior to the scheduled date and posted and maintained in the same manner as the original schedule."  55 N.J.R. 1381(a), 1385 (July 17, 2023) (emphasis added).

CAI-NJ contends these provisions impose requirements of OPMA onto associations, private entities that are not subject to OPMA. The relevant section in OPMA says:

> At least once each year, within [seven] days following the annual organization or reorganization meeting of a public body, . . . every public body shall post and maintain posted throughout the year . . . for the purpose of public inspection[,] a schedule of the regular meetings of the public body to be held during the succeeding year. Such schedule shall contain the location of each meeting to the extent it is known, and the time and date of each meeting. In the event that such schedule is thereafter revised, the public body, within [seven] days following such revision, shall post, mail and submit such revision in the manner described above.
>
> [N.J.S.A. 10:4-18.]

The Department noted in its notice of action that subsections (b) and (h) were adapted from the former N.J.A.C. 5:20-1.2, which contains similar guidelines for providing notice of open meetings.

CAI-NJ does not argue on appeal that the requirements are unreasonable due to associations' inability to comply with them. Its argument rests on the fact the notice requirements reflect the notice requirements in OPMA.

This is insufficient to invalidate the regulation. As explained, the regulations are presumed to be valid and reasonable. Schundler, 211 N.J. at 548

(quoting N.J. Soc'y for Prevention of Cruelty to Animals, 196 N.J. at 385). None of the content of the regulation itself conflicts with PREDFDA or is unreasonable. It simply requires the open meeting schedule to be posted within a week of the annual meeting, and it provides a method for cancellation of those meetings should it be needed. For these reasons, we reject this argument.

In summary, we affirm in part, reverse in part, and remand to the Department to address N.J.A.C. 5:26-8.10(a)(2), 5:26-8.12(e)(2), and 5:26-8.13(f)(4), consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION